The EDGE–JANUARY, INC. d/b/a The
Edge and d/b/a January's

v.

Louis H. PASTORE, Jr.

No. 80–554–M.P.

Supreme Court of Rhode Island.

June 17, 1981.

Kirshenbaum & Kirshenbaum, Alfred Factor, Van L. Hayhow, Providence, for petitioner.

Dennis J. Roberts, II, Atty. Gen., Faith A. LaSalle, Sp. Asst. Atty. Gen., Gerald Pouliot, Asst. City Sol., Pawtucket, for respondent.

OPINION

BEVILACQUA, Chief Justice.

This petition for certiorari was filed pursuant to the Rhode Island Administrative Procedures Act, G.L.1956 (1977 Reenactment) § 42–35–16.[1]  The petitioner, holder

1.  We granted the petition and issued the writ on December 11, 1980.  *The Edge-January, Inc. v. Pastore*, 423 A.2d 1390 (R.I.1980).  Pursuant thereto, transcripts and exhibits relevant to this matter have been certified to this court.

of class B–V alcoholic-beverage licenses for the premises known as "The Edge" and "January's" in the city of Pawtucket, seeks review of a Superior Court judgment affirming a decision of the State Liquor Control Administrator. The Liquor Control Administrator had previously affirmed the Pawtucket Board of Licensing Commissioners' decision not to renew the petitioner's alcoholic-beverage licenses.

The record discloses that the Pawtucket City Council sitting as the Pawtucket Board of Licensing Commissioners (the board) conducted a hearing upon petitioner's applications for renewal of its class B–V alcoholic beverage licenses for the establishments known as "January's" and "The Edge," which are located directly opposite each other on Benefit Street in Pawtucket, Rhode Island. At the hearing, witnesses who testified in support of the liquor-license renewals were either patrons or employees of petitioner's establishments. All the witnesses who testified in opposition to the liquor-license renewals resided in the neighborhood—with one exception; the one witness who did not reside in the neighborhood had previously resided in the area but had left because of the existing conditions. Additionally, the chief of the Pawtucket police department testified to fights and other incidents at petitioner's establishments that required police response on numerous occasions.

Essentially, the neighbors testified that there was excessive noise in the area, that young people urinated on their property, that people drank beer in cars that were parked illegally in front of said property, and that people smashed bottles and generally littered the neighborhood. Some neighbors testified that they were often awakened by the loud yelling and the tooting of automobile horns that occurred around closing time at petitioner's estab-

lishments. All of the neighbors testified that the problems outlined had been going on for a number of years.

Those witnesses who testified in support of petitioner's applications stated that the complaints of the neighbors were grossly exaggerated. Moreover, petitioner's witnesses alleged that other neighborhood establishments, including a liquor package store, a bar, and a hall where parties were often held, constituted the primary source of the problems described by the residents in the area. Additionally, petitioner, while maintaining that many of the problems outlined by the neighbors did not originate in its establishments, presented testimony that it had established and implemented new policies in conducting the business of "The Edge" and "January's" as evidence of its good-faith effort to assuage the alleged problems in the neighborhood.[2]

At the conclusion of the hearing, the board unanimously voted to deny petitioner's liquor-license renewal applications. The petitioner thereupon appealed the decision of the board to the State Liquor Control Administrator pursuant to G.L.1956 (1976 Reenactment) § 3–7–21.

At the hearing *de novo* before the Liquor Control Administrator, the certified transcript of the testimony adduced at the hearing before the board was introduced and, by agreement of the parties, was made a part of the appeal record. Additionally, counsel for each party was allowed to make statements in the nature of final arguments before the Liquor Control Administrator.

After reviewing the evidence submitted, the Liquor Control Administrator found that the series of disorderly incidents outlined by the neighbors occurred just outside petitioner's establishments. Furthermore, the Liquor Control Administrator deter-

**2.** For example, the previous policy of permitting patrons to be admitted to either "January's" or "The Edge" on one cover charge was dropped in an effort to stop young people from traversing back and forth between the two establishments on Benefit Street. Moreover, a stricter dress code was implemented and additional police were hired to patrol the area outside the two establishments in an effort to curb any illegal parking and generally to maintain the peace in and around the establishments.

mined that the evidence presented demonstrated that the problems described occurred repeatedly and had been occurring for a number of years. Finally, the Liquor Control Administrator found that from the evidence presented, one could reasonably infer that the repeated disorderly incidents that occurred just outside petitioner's licensed establishments had their origin within. Accordingly, the Liquor Control Administrator affirmed the board's decision to deny petitioner's applications for the liquor-license renewals.

■ Following the adverse decision, petitioner sought review of the Liquor Control Administrator's decision pursuant to G.L. 1956 (1977 Reenactment) § 42–35–15, as amended by P.L.1979, ch. 340, § 1.[3] The trial justice, in entering a judgment affirming the decision of the Liquor Control Administrator, stated that there was "legal, competent evidence in the record from which it [could] be reasonably inferred that the series of disorderly activities generated from the establishments in question."

In this certiorari petition, the issue confronting us is whether there is any legally competent evidence to support the findings of the trial justice. The petitioner contends that absent a showing of a direct nexus between the disturbances in the neighborhood and the conduct within the establishments, no legally competent evidence exists in the record upon which the trial justice could have based his determination to uphold the decision of the Liquor Control Administrator not to renew petitioner's liquor licenses.

■ Before addressing the issue presented, we note that our scope of review of a trial justice's decision in a liquor-license case is of a limited nature. *See Manuel J. Furtado, Inc. v. Sarkas*, 118 R.I. 218, 223, 373 A.2d 169, 171 (1977). In examining the record, this court does not consider whether the evidence was strong or weak, direct or circumstantial; nor do we pass on the credibility of witnesses. *Chernov Enterprises, Inc. v. Sarkas*, 109 R.I. 283, 288, 284 A.2d 61, 63 (1973). Rather, we confine ourselves to a determination of whether there is any legal, competent evidence or reasonable inference therefrom to support the findings of the trial justice. *Manuel J. Furtado, Inc. v. Sarkas*, 118 R.I. at 223, 373 A.2d at 172; *Mathieu v. Board of License Commissioners*, 115 R.I. 303, 308, 343 A.2d 1, 4 (1975).

■ In the instant case petitioner argues that in order to support a finding that disorderly incidents or disturbances occurring outside of a licensee's premises had generated from within the premises so as to establish sufficient cause for nonrenewal under G.L.1956 (1976 Reenactment) § 3–7–6, as amended by P.L.1976, ch. 240, § 1, a direct causational nexus must be demonstrated between the alleged disturbances in the neighborhood and the conduct of the patrons within the licensed premises. The petitioner contends that no such direct nexus can be established in the instant case because there were other establishments in the area which sold or served liquor, any of which could have been the source of the disorderly incidents in the neighborhood. Accordingly, petitioner argues that the trial justice's decision affirming the determination of the Liquor Control Administrator must be reversed because the record is devoid of any evidence to link the disturbances in the neighborhood directly to petitioner's establishments. We find no merit to this argument.

Pursuant to § 3–7–6, an application for renewal of a liquor license may be rejected only for cause. In construing § 3–7–6, we have determined "that a *cause*, to justify action, must be *legally sufficient*, that is to say, it must be bottomed upon substantial grounds and be established by legally competent evidence." *Chernov Enterprises, Inc. v. Sarkas*, 109 R.I. at 287, 284 A.2d at 63.

---

**3.** The petitioner initially claimed that it had a right to a review *de novo* pursuant to G.L.1956 (1976 Reenactment) § 3–3–9, as amended by P.L.1980, ch. 142, § 4. As the trial justice correctly indicated, however, § 3–3–9 as amended allows for a *de novo* trial only when the appeal is from a decision of the Liquor Control Hearing Board and not when one is seeking a review of a decision of the Liquor Control Administrator.

**1066**

We have determined, however, that a direct causational link is established when it can be reasonably inferred from the evidence presented that the disorderly incidents occurred just outside a licensee's premises and had their genesis within. *See Manuel J. Furtado, Inc. v. Sarkas,* 118 R.I. at 224, 373 A.2d at 172. Additionally, we have indicated that a licensee is responsible for conduct within the licensed premises "that causes either directly or indirectly conditions in the neighborhood in annoyance of or disturbing to the residents thereof." *Cesaroni v. Smith,* 98 R.I. 377, 384, 202 A.2d 292, 296 (1964).

In the instant case, testimony was elicited from several of the neighbors that in the vicinity of "The Edge" and "January's" young people would urinate and engage in sexual activities in public, people would drink beer and then smash their beer bottles on the property of the neighbors, and people would yell and honk their car horns in the area, especially around closing time at the establishments. Moreover, the record discloses that on numerous occasions, the police had to be summoned to petitioner's establishments to stop fights and quell disturbances. Additionally, several of the neighbors testified that when "The Edge" and "January's" featured live bands, the large numbers of young men and women that were attracted to the premises would become particularly noisy and boisterous.

Upon review of the testimony presented, the trial justice determined that there was legal, competent evidence from which it could be reasonably inferred that "The Edge" and "January's" were the catalysts that brought about the disruptive incidents in the neighborhood and, further, that the series of disorderly activities in the neighborhood generated from the establishments in question. In applying the appropriate standard of review in the instant case, we find no error in the trial justice's decision.

The petitioner's argument that the disturbances in the neighborhood could have been generated by any of the other surrounding establishments licensed to serve or sell liquor does not affect our determina-

tion. We have stated previously that proving causation by reasonable inferences is not proof that necessarily excludes every other possible cause. *See Hill v. State,* R.I., 398 A.2d 1130, 1132 (1979); *Salk v. Alpine Ski Shop, Inc.,* 115 R.I. 309, 312, 342 A.2d 622, 625 (1975). Instead, we have indicated that the reasonable inferences must be drawn from facts in evidence. *See Manuel J. Furtado, Inc. v. Sarkas,* 118 R.I. at 223, 373 A.2d at 172; *Nahigian v. Belcher & Loomis Hardware Co.,* 66 R.I. 194, 198, 18 A.2d 388, 389 (1941). Relying on the record before us, we find that the inferences approved by the trial justice were reasonably drawn from the facts in evidence.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are remanded to the Superior Court with our decision endorsed thereon.

SHEA, J., did not participate.