A.J.C. ENTERPRISES, INC. d.b.a.
Back Street Saloon

v.

Louis H. PASTORE, Jr., et al.

A.J.C. ENTERPRISES, INC.

v.

J. Michael LENIHAN et al.

Nos. 81–162–M.P., 81–213–Appeal.

Supreme Court of Rhode Island.

Feb. 21, 1984.

Reargument Denied March 29, 1984.

William A. Gosz, Providence, for petitioner/plaintiff.

Robert M. Lovegreen, Hinckley & Allen, Providence, Dennis J. Roberts, II, Atty. Gen., Faith A. LaSalle, Sp. Asst. Atty. Gen., for respondents/defendants.

## OPINION

KELLEHER, Justice.

This litigation centers upon the refusal of the East Greenwich Town Council to renew a liquor license that it had previously issued to A.J.C. Enterprises, Inc. The propriety of the East Greenwich Town Council's refusal comes before us by way of two appeals. One is pursuant to the provisions of the Administrative Procedures Act, namely, G.L.1956 (1977 Reenactment) § 42–35–16, and challenges the affirmance by the State Liquor Control Administrator of the town council's refusal to renew. The other appeal comes by way of an independent civil action in which the licensee sought a declaratory judgment ruling that certain provisions of the alcoholic beverages licensing statutes were unconstitutional. In the Superior Court both the appeal and the declaratory-judgment action were consolidated for hearing before a Superior Court justice, who affirmed the State Liquor Control Administrator's ruling and rejected the licensee's constitutional challenge.

Since the licensee did business as the Back Street Saloon, we shall hereinafter refer to the licensee as "Back Street" or "the saloon." We shall also refer to the East Greenwich Town Council as "the council" and the State Liquor Control Administrator as "the administrator." Initially, we shall consider Back Street's appeal from the administrator's ruling and then go on to consider the questions raised in the declaratory-judgment action.

On December 1, 1978, the council granted Back Street's application for a class B liquor license. The licensed premises are situated in East Greenwich at 79 Duke Street. The premises were formerly occupied by a family restaurant called Mama Chiello's, which held the license now in dispute. After obtaining the license, Back Street's management group decided, in a manner of speaking, to ignore family and motherhood and operate an establishment that would attract the younger generation. Back Street was open seven days a week, offering food, drink, pinball and video games, a juke box, occasional live music, and plenty of space for the younger generation to gather and socialize. And socialize the youngsters did—because from all accounts Back Street did a thriving business. The neighbors, however, were less than thrilled with the new look. They perceived Back Street's operation as an unwarranted and unwelcome intrusion within the neighborhood and made their feelings known to East Greenwich officialdom.

In any event, as the licensing year was about to expire, the council issued a summons to Back Street, alleging that the patrons of the saloon had become disorderly, thereby annoying and disturbing the neigh-

bors. The summons stated that a full and public hearing would be held on December 4, 1979, "on the question of the renewal, denial, revocation or suspension of your Class B alcoholic beverage license issued for the premises at 79 Duke Street, East Greenwich, Rhode Island."

The council held several nights of hearings and, as a result, denied Back Street's application for renewal of its license. Over a dozen witnesses testified in opposition to the renewal. The gist of their testimony was that there were problems with excessive noise, parking congestion, public urination, unruly customers, and litter; they linked these problems to Back Street's patrons. Back Street's management never denied that these problems existed but instead claimed that they resulted from the fact that Back Street is only one of twenty-three establishments licensed to sell liquor in the neighborhood. The council rejected this argument.

In its appeal from the Superior Court's affirmation of the administrator's ruling,[1] Back Street raises a number of issues relating to (1) the council's status as a party defendant, (2) the responsibility for paying the cost of the transcript of the proceedings held before the administrator, (3) the sufficiency of that transcript, and (4) the evidentiary basis for the administrator's decision.

When Back Street's appeal reached the Superior Court, the only named party defendant was the administrator. In its declaratory-judgment action, however, it had named both the council and the Attorney General as defendants. Subsequently, the parties filed a stipulation consolidating both cases and joining the council as a named defendant in the administrative appeal. All agreed that this joinder would not bar Back Street from later challenging its propriety.

The initial facet of Back Street's appeal concerns the council's status as a named defendant in its appeal made pursuant to the pertinent provisions of the Administrative Procedures Act. The council contends that it had the requisite aggrievement that would justify its intervention as a defendant. In taking this position, the council points to *Matunuck Beach Hotel, Inc. v. Sheldon*, 121 R.I. 386, 399 A.2d 489 (1979), where the court ruled that a municipal liquor licensing agency, as the guardian of the public interest, had the necessary standing to seek judicial review of the administrator's overruling of the municipal agency and ordering the issuance of a liquor license. The public interest that serves as a basis for the licensing agency's status is the concern that administrative action, with its possible arbitrariness, will go unreviewed and thereby become conclusive. Here, however, there is no such concern. The administrator has sustained the council, and with that he assumes the role as guardian of the public interest. The administrator, in seeking to sustain the position taken not only by himself but also by the council, can seek the assistance of the Department of the Attorney General, which early on in this proceeding did represent the administrator. The inclusion of the council, while erroneous, is harmless.

Parenthetically, we would point out that the council was not a party at the hearing before the administrator. The record of that hearing indicates that the attorney who now represents the council in this litigation is identified as counsel for the "remonstrants"—the sixteen witnesses who then described for the administrator how conditions in the neighborhood had deteriorated since Back Street began its operation. One witness who had lived in the neighborhood for some sixty-three years, in describing the deterioration in the quality of life in

---

1. General Laws 1956 (1976 Reenactment) § 3–7–6 provides that any renewal application that is rejected can be appealed to the administrator pursuant to the provisions of § 3–7–21. The court, in construing § 3–7–21, has ruled that this section gives a licensee a de novo hearing before the administrator rather than an appellate review of what occurred at the municipal level, and consequently, any alleged error of law or fact committed by the municipal agency is of no consequence. *Hallene v. Smith,* 98 R.I. 360, 365–66, 201 A.2d 921, 9–4–25 (1964).

the locale, told the administrator that once Back Street opened its doors, life became "hell on earth."

Back Street next claims that the state, rather than the saloon, should have been required to pay for the cost of the transcript of the hearing before the administrator. It relies on § 42–35–15(d), which provides that when an aggrieved party seeks judicial review of an administrative decision, the agency whose actions are being reviewed shall "transmit" to the reviewing court the entire record of the agency proceedings.

The trial justice in his decision ruled that Back Street must bear the expense of the transcript. He based this on Super.R.Civ.P. 78, which states that the party requesting the transcript shall pay the cost.

█ We acknowledge that Rule 78 does not apply to transcripts of administrative proceedings because it applies solely to testimony taken in the Superior Court. We believe, however, the word "transmit" as used in § 42–35–15(d) is used as a synonym for the term "send." *Martin v. Garlotte*, 261 La. 967, 974, 261 So.2d 632, 634 (1972). We also believe there is no obligation on the administrator to "send" until such time as the appealing party has paid for the cost of the transcript or has taken steps to ensure its payment. In this case, Back Street paid the stenographic fee, making it clear that the payment was without prejudice to its right to raise the issue that we have just resolved.

During the pendency of its appeal to the Superior Court, Back Street filed a motion in which it asked permission to present additional evidence before the administrator. The motion by its specific terms was based upon the pertinent provisions of § 42–35–15(e), which permits a remand to the agency being reviewed if there is a showing that the evidence to be submitted is material and if there was good reason for the failure to present it when the controversy was at the administrative level. Subsequent to the filing of the motion, an order was entered, stating that the motion would come on to

be heard when the appeal came on for a hearing on its merits.

In his decision the trial justice denied the motion, pointing out that at no time did Back Street submit an affidavit in support of its motion or give any reason for its failure to produce such evidence at the hearing.

In arguing before us, Back Street's counsel complained that the trial justice misconceived the thrust of his motion. Counsel maintained that, in making the motion, his concern was not with the need for additional testimony but with the inadequacies in the transcript furnished by the administrator. Hearings before the administrator are electronically recorded, and the tapes are then stenographically transcribed. Back Street's hearing is embodied in three volumes. Each volume consists of a stenographic transcript made by a nationally known agency. Admittedly, the record contains many "inaudible" notations. The notations would indicate that the recorder had failed to pick up the remarks of whoever had spoken.

However, a careful listening to the tapes reveals that the so-called "inaudibles" suddenly become audible. The new audibles cast no cloud on the actions taken by the administrator. In fact, they afford further support for the refusal to renew and catch the full flavor of the protestants' despair with what occurred in the neighborhood once Back Street's patrons began to converge on the Duke Street area.

█ The misunderstanding between counsel and the trial justice is understandable, particularly in light of the motion's specific reliance on § 42–35–15(e), but we see no reason whatsoever for disturbing the trial justice's denial of the motion, whether it be considered as a motion to obtain additional evidence or as a motion to review the transcript.

The court in *Vitterito v. Sportsman's Lodge & Restaurant, Inc.*, 102 R.I. 72, 228 A.2d 119 (1967), noted that although a liquor license was not "property" in the strict

legal sense, it did possess certain aspects of a property right which afforded its holder the federal constitutional guarantees of due process and equal protection. Back Street now claims that the trial justice erred when he rejected the licensor's constitutional challenge to the vagueness and ambiguity contained in G.L.1956 (1976 Reenactment) § 3–7–6 and refused to examine § 3–5–23 for identical infirmities.

■ We shall dispose of § 3–5–23 first. This section provides for the revocation or suspension of a liquor license under certain circumstances. It has nothing to do with the denial of an application to renew an existing license. Because plaintiffs' license was neither revoked nor suspended, § 3–5–23 is not applicable to the case before us. The trial justice did not err when he declined to consider its constitutionality. *Mathieu v. Board of License Commissioners of Jamestown,* 115 R.I. 303, 343 A.2d 1 (1975).

Now we turn to § 3–7–6, which provides that an application for renewal of a liquor license may be rejected for "cause." Back Street claims the "cause" standard deprives it of due process because it is vague and indefinite.

■ In determining whether the statutory standard now under consideration is so vague as to offend due process, we are mindful of the principle that vague legislative standards may be saved if the needed specificity has been supplied by judicial interpretation. *Grayned v. City of Rockford,* 408 U.S. 104, 111, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222, 229 (1972). The requisite judicial gloss was supplied in *Chernov Enterprises, Inc. v. Sarkas,* 109 R.I. 283, 287, 284 A.2d 61, 63 (1971), wherein the court emphasized that in authorizing revocation for cause, the Legislature never intended either to confer upon a licensing authority a limitless control or to countenance the use of an unbridled discretion. The cause, the court noted, that would justify revocation had to be "legally sufficient"; that is, it must be bottomed upon substantial grounds and established by legally competent evidence. Back Street could ask for nothing more.

Having upheld the constitutionality of the statute, we now consider Back Street's claim that the record is barren of any evidence indicating adequate cause to deny the renewal of its license.

■ Our review is limited to determining whether or not there is any legally competent evidence to support the judgment below. If such evidence exists, we shall affirm the trial justice. *The Edge-January, Inc. v. Pastore,* R.I., 430 A.2d 1063 (1981); *Manuel J. Furtado, Inc. v. Sarkas,* 118 R.I. 218, 373 A.2d 169 (1977); *Mathieu v. Board of License Commissioners of Jamestown, supra.*

Before we can decide whether or not the cause relied upon in this case was legally sufficient, we must examine the record. We do so not to determine whether the evidence is strong or weak, direct or circumstantial, or to pass on credibility. Rather, we look only to determine whether or not there is any legal evidence or reasonable inference therefrom to support the trial justice's findings. *The Edge-January, Inc. v. Pastore, supra.*

We have examined the extensive testimony of the individuals who appeared before the administrator, and we feel that it constitutes "substantial grounds" and is "legally competent evidence." The hearing before the administrator was, in a manner of speaking, a not-so-instant replay of what had been heard by the council. As mentioned, numerous witnesses, all of whom live near Back Street, testified at length concerning the increase in noise, parking congestion, litter, public urination, patrons either screaming, intoxicated, or pugnacious, as well as an increase in various other activities, all of which disrupted the neighborhood's established way of life.

Back Street also argues that the trial justice was wrong in upholding the administrator because there is no direct connection between the neighbors' complaints and Back Street's patrons. They claim that

without this connection there is no legally competent evidence on which the administrator could have made his decision.

 We have said at least twice recently that there need not be a direct causational link between incidents occurring outside or nearby a drinking establishment and its patrons. Such a link is established when it can be reasonably inferred from the evidence that the incidents occurred outside a particular establishment and had their origins within. *The Edge-January, Inc. v. Pastore, Manuel J. Furtado, Inc. v. Sarkas,* both *supra.*

In this case several witnesses testified that they watched people urinate on private property after leaving Back Street and that when the establishment closed at night there was a great deal of noise because people were yelling, screaming, slamming car doors, and revving engines. These occurrences did not take place before Back Street opened. We feel it is reasonable to infer from the evidence that the undesirable activities that occurred outside and around Back Street had their origin within. Consequently, we shall not disturb the conclusions and the actions of the trial justice.

Finally, we would again emphasize that once a licensee such as Back Street receives a liquor license, it assumes an obligation to supervise the conduct of its clientele so as to preclude the creation of conditions within the surrounding neighborhood which would amount to a nuisance to those who reside in the area. This burden, we have said, is "onerous," but it is part of the continuing responsibility assumed by the licensee upon receipt or renewal of a license. *Cesaroni v. Smith,* 98 R.I. 377, 383, 202 A.2d 292, 296 (1964). Here, there is evidence that indicates that the licensee did not discharge its onerous burden.

In the certiorari proceeding, Back Street's petition is denied and dismissed, and the writ previously issued is quashed. In Back Street's declaratory-judgment action, the appeal is denied and dismissed, the judgment appealed from is affirmed, and the stay previously issued in this proceeding is dissolved.

BEVILACQUA, C.J., and SHEA, J., did not participate.