DECISION
Before this Court is petitioners' appeal from a decision of the Department of Business Regulation (DBR), denying a liquor license transfer from petitioner Laurence E. DeChristofaro, Jr. to petitioner Francisco Batista. The petitioners argue that the Hearing Officer abused his discretion and committed error of law by refusing to grant the liquor license transfer. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
Petitioner, Lawrence E. DeChristofaro, Jr., (DeChristofaro), was the owner of a bar known as "Chaps," for which he was the holder of a Class BX liquor license. In September 1998, DeChristofaro entered into a purchase and sale agreement to sell Chaps and to transfer its liquor license to petitioner, Francisco Batista, hereinafter "Batista." Batista was at the time, and currently is, involved with running a club called "Club 3030."
On October 13, 1999, the Providence Board of Licenses denied the liquor license transfer application. Batista appealed to the Rhode Island Department of Business Regulation. At the hearing before the DBR, the primary witness in opposition to the liquor license transfer was Louis A. Aponte, the area Councilman. (Tr. at of December 15, 1999 at 16-17.) Councilman Aponte expressed community concerns that Chaps, which had traditionally been run as a local bar, would attempt to expand and that this expansion would deleteriously affect the character of the neighborhood. Id.
Settlement negotiations resolved these community concerns through a consent agreement signed on February 21, 2000. The consent order stated that the application to transfer the license was to be granted upon the following terms:
 1. Batista Realty, LLC. agrees that it will provide the Washington Park Foundation written notice at last 30 days in advance of any presentation at Chaps Cafe involving live entertainment.
 2. Batista Realty, LLC. agrees to monitor parking by patrons of Chaps Cafe on Chapman Street and O'Connor Street and to assure that there is no interference with the existing businesses and residential homes on Chapman Street and O'Connor Street.
 3. Batista Realty, LLC. agrees that every night that Chaps Cafe is open, upon closing, they will remove all bottles and cans from Chapman Street.
 4. Batista Realty, LLC. agrees that Franciso Batista will make himself available to the Washington Park Foundation, in person, upon receiving written notice at least 15 days in advance of the purpose of the meeting, the time, date and place of the meeting.
 5. Batista Realty, LLC. agrees that it will provide at least two security officers whenever Chaps Cafe is open after 9 p.m. and until closing, on Fridays, and Saturdays, and Sundays before a R.I. holiday. Batista Realty, LLC. further agrees that whenever there is a presentation involving live entertainment on said nights the two security guards will be uniformed Providence Police Detail Officers.
 6. Batista Realty, LLC. agrees that for a nine month period, following the entry of this agreement, it will not expand Chaps Cafe in any manner.
 7. Batista Realty, LLC. agrees that in the event that within a nine month period, following the entry of this agreement, the Washington Park Foundation is able to identify a buyer for Chaps Cafe and the three adjacent lots and a location and a building, which is suitable to Batista Realty LLC., it will apply to the Rhode Island Department of Business Regulation to transfer the licenses and business to the new location. Upon approval of said transfer, Batista Realty, LLC. further agrees to convey to the Washington Park Foundation buyer the existing Chaps Cafe realty, and the 3 adjacent lots for the sum of $100,000 and $130,000, respectively.
 8. The parties agree that jurisdiction over this consent order and Chaps liquor license will remain exclusively with the R.I. Department of Regulation for a nine month period, following the entry of this order.
Subsequent to the signing of the consent order, the Department of Business Regulation moved to suspend, revoke or, in the alternative, deny the transfer of the license, on June 5, 2000. Hearings were reopened to review the impact of two incidents upon Chaps's liquor license. One incident involved a shooting that had occurred nearby on May 14, 2000. The other incident involved the posting of an advertisement of an illegal drink special.[1]
The primary issue at the hearing concerned the alleged shooting. Providence Police Officer Gregory Daniels testified that he had responded to a call that there had been a shooting outside Chaps. (Tr. of October 26, 2000 at 16.) When he arrived at the scene, a crowd had gathered around a white car parked about 15 yards from Chaps. (Id. at 6.) Furthermore, he testified that a female was talking to a male inside the vehicle. Id. The male, according to Officer Daniels, appeared to have been shot several times. Id. On closer observation, Officer Daniels noticed that the male had a handgun wrapped in a sock. Id.
Officer Daniels recognized the male in the car as Alahandro Brown and determined that the woman speaking to him was his girlfriend. He testified that there had been a fight inside Chaps among some females, and that Alahandro came to help straighten it out. (Id. at 7.) Officer Daniels concluded that he believed the shooting had its origins from events at Chaps. Id.
The real estate closing between petitioners occurred on March 31, 2000. On April 1, 2000, DeChristofaro went to Chaps with Batista and gave him the keys and showed him how to operate the equipment. (Tr. of November 3, 2000 at 5.) DeChristofaro took all of his belongings, and the liquor license. (Id. at 11.) At the time of the closing, the liquor license belonged to him. (Id. at 10.) DeChristofaro testified that, subsequent to the closing, he had nothing to do with the operation of Chaps in an official capacity, was not getting paid, and only "stopped by." (Id. at 7.)
Despite Batista's belief that the consent order gave him the legal authority to operate Chaps, Batista never had such authority because the liquor license was never properly transferred to him. While the consent order details the conditions on which the license transfer was granted, it did not specify the preliminary legal requirements for effectively transferring the liquor license. Batista testified that he believed that the consent order gave him the legal authority to operate Chaps on DeChristofaro's license. As evidence of his good faith, Batista points out that he hired two detail police officers for two evenings in April. However, DeChristofaro was required to file a 2000 tax return with the Rhode Island Division of Taxation. Id. DeChristofaro's did not obtain a certificate from the Providence Board of Licenses that his liquor license was in good standing until May 26, 2000. Id. at 6. This certificate of good standing was necessary to effectuate the license transfer and certifies that the license holder has paid all taxes due to the state. G.L. 1956 § 3-7-24. On May 18, 2000, DeChristofaro turned over his liquor license to Richard Aitchison from the Providence Board of Licenses. (Id. at 10.)
The Hearing Officer denied the license transfer from DeChristofaro to Batista. The Hearing Officer concluded that if transfer hearings were held at the Providence Board of Licenses, that the City would rely on the evidence of the shooting to reasonably conclude that the license transfer would not be in the best interest of the community. (Exh. A/B at 12.) The Hearing Officer found that the shooting created a safety issue that provided sufficient grounds to deny the license transfer. (Id. at 13.) This appeal followed. At issue before this Court is whether the Hearing Officer abused his discretion in denying the license transfer.
 Standard of Review
The scope of the Superior Court's review of administrative decisions is confined by G.L. 1956 § 42-35-15(g) which provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other errors or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing administrative decisions, the Court will not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Carmody v. Rhode Island Conflict of Interest Com'n, 509 A.2d 453, 458 (R.I. 1986). On review, a Superior Court judge does not weigh the evidence upon which the findings of fact are based but merely reviews the record in order to determine if there is legally competent evidence to support the administrative decision. Bunch v. Board of Review, Rhode Island Dept. of Employment and Training, 690 A.2d 335, 337 (R.I. 1997); St. Pius X Parish Corp. v. Murray, 557 A.2d 1214, 1218 (R.I. 1989). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). `Substantial evidence' is that which a reasonable mind might accept to support a conclusion. (Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). The Court is precluded from "substituting its judgment for that of the agency in regard to credibility of witnesses or to the weight of the evidence concerning questions of fact." Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). This court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resource Management Council, 434 A.2d 266, 272 (R.I. 1981).
 License Transfer
As a general rule, the holder of a liquor license may freely contract to transfer the license to other persons subject to official approval of the transfer. Samuel's Realty Co, Inc. v. McCarthy, 512 A.2d 872 (R.I. 1986). The standard for transferring a license is the same as the standard applied when the Board is making an initial determination whether or not to grant a liquor license. G.L. 1956 § 3-5-19; Decredico v. City of Providence Board of Licenses, 1996 R.I. Super. LEXIS 30 (1996). Under Section 3-5-19, "the board, body or official which has issued any license under this title may permit the license to be used at any other place within the limits of the town or city where the license was granted, or, in their discretion, permit the license to be transferred to another person." G.L. 1956 § 3-5-19. The Rhode Island Supreme Court noted that under § 3-5-19 the transferee would be subject to any legal impediment to the transfer of the license to a new location and would be subject to the remonstrances of those entitled to object to its relocation. Ramsay v. Sarkas, 295 A.2d 416 (R.I. 1972).
A transferee of a liquor license must meet the same requirements of the Providence Liquor Board that the original applicant satisfied, including overcoming community objections to the transfer. Under the Providence Home Rule Charter, the Board of Licenses is empowered to require inspection, investigation, and report by the police department concerning the fitness of the person licensed. Home Rule Charter for the City of Providence, § 1102 (a) (b). "Implicit in this grant of power is a policy of granting liquor licenses only to individuals of suitable character, that is, those without history of trouble with the law." Decredico v. City of Providence Board of Licenses, 1996 R.I. Super. LEXIS 30 (1996).
The Court has distinguished between the standard applicable for issuing a liquor license, as opposed to the standard applied when suspending, revoking or renewing a liquor license. Casala v. Dio, 65 R.I. 96; 13 A.2d 683 (R.I. 1940). Under G.L. 1956 § 3-5-21, a license can be revoked or suspended if a condition of issuance of the license was breached or for violation by the holder of the license of any rule or regulation applicable. Thus, while a license can only be revoked or suspended if a condition of issuance has been violated, in an initial determination concerning the issuance of a liquor license, the licensing board has broad discretion to consider whether issuing the license is in the best interest of the community. Board of Police Comm'rs. of the City of Warwick v. Reynolds, 86 R.I. 172, 176, 133 A.2d 737, 740 (R.I. 1957).
At issue, in the instant matter, is whether the applicable standard is the transfer standard or the standard for revocation of a license. The Hearing Officer granted Chaps the liquor license by approving the consent decree, which read that the license was granted. However, under Rule 14 of the Department of Business Regulation, there is a distinction between issuance of a license and the granting of a license. Rule 14 states "a retail alcoholic beverage license may be granted but not issued pending full compliance with conditions and criteria necessary for issuance of said license." (Department of Business Regulation Rule 14.) While the Board granted the license, the petitioners would then have had to comply with all of the criteria for the issuance of a license. Under G.L. 1956 § 3-7-24, "[e]very license under this chapter, upon filing an application for renewal or transfer of a license, shall submit with the application a certificate executed by the tax administrator, that taxes due the state have been paid."
Because this certificate was never obtained, the license was never transferred, and the Court will review the Hearing Officer's decision under the standard applicable for the transfer of such license. The Board has broad discretion in determining whether to allow the transfer of a liquor license. Reynolds, 86 R.I. at 177; 133 A.2d at 741. Therefore, the Court will review the Hearing Officer's decision denying the transfer under an abuse of discretion standard.
 Abuse of Discretion
General Laws 1956 § 3-1-5 expressly declares that the purpose of Title 3 is "the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." The Rhode Island Supreme Court has noted that licensing provisions of Title 3 are to be construed to permit towns to regulate for the purposes of controlling alcohol use and distribution. Amico's Incorporated v. Mattos, No. 2001-118, slip opinion at 10 (R.I. filed February 15, 2002).
Pursuant to a city's authority to control alcohol use, a licensee "assumes an obligation to affirmatively supervise the conduct of patrons so as to preclude the generation therefrom of a condition of nuisance in the surrounding neighborhood." Furtado v. Sarkas, 118 R.I. 218;373 A.2d 169, 172 (1977); Cesaroni v. Smith, 202 A.2d 292, 98 R.I. 377
(1964). The Rhode Island Supreme Court has acknowledged that this burden is "onerous," but has held that it is within the authority of the legislature because liquor control is peculiarly within the policing power of the state. Cesaroni v. Smith, 98 R.I. 377, 383, 202 A.2d 292, 296 (1964). In establishing that a licensee failed to supervise the conduct of patrons, the licensing board does not have to show a direct casual link between incidents occurring outside a drinking establishment and the conduct of the establishment's patrons. A.J.C. Enterprises, Inc. v. Pastore, 473 A.2d 269, 275 (R.I. 1984). "A link is established when it can be reasonably inferred from the evidence that an incident occurring outside a particular establishment had [its] origins within." Id.
In Furtado v. Sarkas, the Rhode Island Supreme Court upheld the local licensing board's revocation of a liquor license based on disorderly conduct occurring outside the club. Furtado, 118 R.I. at 225, 373 A.2d at 172. The Court stated that evidence of disorderly conduct within the club does not have to be shown. Furtado, 118 R.I. at 219; 373 A.2d at 171. The disorderly conduct consisted of a shooting and fights that occurred on separate occasions outside the club. The Court found testimony of police officers sufficient to link the outside disturbance to events occurring at the club. Id.
Similarly, in Edge-January, Inc. v. Pastore, 430 A.2d 1063 (R.I. 1981), the Supreme Court upheld the denial of renewal of a liquor license based on testimony from several neighbors that young people would urinate and engage in sexual activities in public, people would drink beer and then smash their beer bottles on the property of the neighbors, and people would yell and honk their horns in the area. Id. 1064. Moreover, testimony demonstrated that on numerous occasions, the police had to be summoned to stop fights and quell disturbances. Id. The Edge-January Court rejected the petitioner's argument that the disturbances could have been generated by any of the other establishments licensed to sell liquor in the area. Id. at 1066. The Court emphasized that it has previously held that proving causation by reasonable inferences is not proof that necessarily excludes every other possible cause. Id.
Given the limited nature of this Court's review of agency decisions, this Court is mindful that it "must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence." Costa v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). Given the deference accorded to the Board's decision denying a liquor license, it was not an abuse of discretion for the Hearing Officer to deny the transfer based on the shooting that occurred near Chaps Pub.
Although the petitioners contend that the shooting did not have its origins within Chaps, the Hearing Officer was entitled to weigh the evidence and to judge the credibility of the witnesses in order to make this factual determination. Costa, 543 A.2d at 1309. Based on reliable evidence that the shooting arose out of events at Chaps and the close proximity of the vehicles to Chaps, the record demonstrates that the Hearing Officer had substantial evidence before him that provided a direct casual link between events at Chaps and the shooting that occurred outside the Pub. Thus, the Hearing Officer did not abuse his discretion or commit error of law by denying the license transfer based on the shooting that occurred near Chaps.
 Hearsay Evidence
The petitioners objected to the Hearing Officer's reliance on the statement of a female at the scene who told Officer Daniels that she had a fight inside Chaps earlier in the night and that she called her boyfriend for assistance. (Tr. of October 26, 2000 at 7.) Pursuant to G.L. 1956 § 42-35-10, "the rule of evidence as applied in civil cases shall be followed; but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." The Rhode Island Supreme Court has stated that hearsay evidence can be considered in administrative proceedings as the hearing officer is expected to exercise prudence in considering the evidence and the reliability that must condition its admissibility. DePasquale v. Harrington, 599 A.2d 314, 316 (R.I. 1999).
According to Section 42-35-10, the Hearing Officer was entitled to rely on the hearsay statement of the female because it was necessary for him to learn of the facts surrounding the shooting incident, facts which were not reasonably susceptible to other forms of proof. Additionally, the Hearing Officer was entitled to rely on the statement because it would constitute an excited utterance under Rule 803(2) of the Rhode Island Rules of Evidence. Thus, the Hearing Officer did not rely on inadmissible hearsay in reaching his decision.
 Jurisdiction of the Department of Business Regulation
The petitioners contend that for the nine month period under the consent order the DBR retained jurisdiction not to conduct transfer proceedings but solely to conduct revocation proceedings. Thus, an issue on appeal is whether the Department had continued jurisdiction to deny the license transfer.
General Laws 1956 § 3-7-21 provides "upon application of any petitioner for a license, or of any person authorized to protest against the granting of a license, including those persons granted standing pursuant to § 3-5-19, or upon the application of any licensee whose license has been revoked or suspended by any local board or authority, the director has the right to review the decision of any local board, and after hearing, to confirm or reverse the decision of the board in whole or part, and to make any decision or order as he or she shall consider proper."
The Rhode Island Supreme Court has interpreted this provision as designating the liquor control administrator to be a superlicensing authority with the power to review decisions of the local licensing board de novo and has noted that its authority is not limited to mere appellate review by Section 3-7-21. Hallene v. Smith, 98 R.I. 360, 364, 201 A.2d 921, 924 (1964); Di Traglia v. Daneker, 83 R.I. 227, 232, 115 A.2d 345, 348 (1955).
The Hearing Officer granted the petitioners' request to transfer the liquor license subject to the consent decree which listed conditions governing the granting of the license and also provided that jurisdiction was to remain with the Department of Business Regulation. Thus, the license was granted subject to numerous conditions necessary to satisfy the concerns of the community. Because the petitioners failed to preliminarily comply with Section 3-7-24, requiring a certificate of the payment of taxes, (Tr. of October 26, 2000 at 16.), the license could never be effectively transferred. The Hearing Officer then conducted hearings relative to the license transfer.
The petitioners assert that the Hearing Officer had jurisdiction to conduct only revocation proceedings and did not have jurisdiction to reconsider the transfer because the transfer was already granted by the consent decree. Because the license was granted but never issued, pursuant to Department of Business Regulation Rule 14, the Hearing Officer had jurisdiction to deny the transfer because the transfer was never effectuated and the Hearing Officer was essentially reversing his initial determination granting the license subject to the consent decree. The Hearing Officer acted well within the scope of his broad authority. DiTraglia, 98 R.I. at 365, 201 A.2d.
 Equitable Estoppel
The petitioners contend that the Hearing Officer should be equitably estopped from denying the license transfer because the petitioners relied on the consent decree as completing the license transfer. For equitable estoppel to apply, the following elements must be established: "`first an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct did in fact induce the other to act or fail to act to his injury.'" El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1233 (R.I. 2000) (quoting Providence Teachers Union v. Providence School Board, 689 A.2d 388, 391-92 (R.I. 1997)). The Rhode Island Supreme Court has noted that "`[t]he key element of an estoppel is intentionally induced prejudicial reliance." Id. (quoting East Greenwich Yacht Club v. Coastal Resource Management Council, 118 R.I. 559, 568, 376 A.2d 682, 686 (1977)). Here, the Hearing Officer never intentionally induced the petitioners to rely on the consent decree by not specifying the additional procedural requirements required by law to obtain the license transfer.
 Conclusion
Since the petitioners did not obtain a certification that taxes had been paid under G.L. 1956 § 3-7-24, the subject license could not be effectively transferred. The Hearing Officer did not abuse his discretion or commit error of law by refusing to grant the license transfer at the hearing on July 20, 2000. Because the Hearing Officer's decision was not affected by errors of law, and was supported by reliable, probative and substantial evidence of record, this Court cannot substitute its judgment for the decision of the Hearing Officer. Moreover, the substantial rights of the petitioners have not been prejudiced. Accordingly, the decision of the Hearing Officer is affirmed.
Counsel shall submit the appropriate judgment for entry after notice.
[1] The Hearing Officer found the poster advertising the drink specials to be inconsequential to his analysis because no evidence showed that the poster promoted any illegal activity. (Exh. A/B at 13.)