DECISION
John Aliosio and Aliosio Enterprises, Inc., d/b/a/ Club Confetti (Confetti) appeal a decision of the Department of Business Regulation (DBR), upholding a decision of the City of Providence Board of Licenses (local Board), denying the renewal of Confetti's Class B alcoholic beverage license (license) for violation of G.L. 1956 § 3-7-6. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.[1]
 Facts/Travel
On or about 1986, the Board issued a liquor license to Confetti for the facility located at 393-395 Charles Street, Providence, Rhode Island. Confetti operated as an "ages eighteen and over" facility. On January 10, 2000, the Board denied the renewal of Confetti's liquor license. Confetti appealed the denial to DBR, which issued a stay of the Board's decision on January 12, 2000. The Board held four days of hearings on March 16, 2000; March 17, 2000; April 6, 2000; and May 2, 2000. The DBR, however, reopened the hearings four months later on September 14, 2000, and held additional hearings on November 28, 2000 and on December 4, 2000. The DBR lifted the stay on November 28, 2000.
On January 5, 2001, DBR issued its final decision revoking Confetti's liquor license by affirming the Board's decision of January 10, 2000, denying Confetti's appeal and "application for renewal" of its liquor license. The DBR hearings were held de novo. Extensive testimony was heard regarding the effects of Confetti's business. Specifically, DBR heard testimony from neighbors, employees, council members of the City of Providence, police officers of the City, and Confetti's owner, John Aloisio. See Final Decision of the DBR, J. Aloisio Enterprises, Inc. d/b/a Club Confetti v. City of Providence, Board of Licenses, LCA-PR-00-01, January 5, 2001. DBR set out their findings in detail in their decision. Id. The instant appeal followed.
Confetti argues that the DBR abused its discretion and committed errors of law. Specifically, Confetti argues that the DBR committed errors of law by (1) admitting and relying upon evidence of alleged prior incidents, the admission or consideration of which should have been equitably estopped due to an agreement between the Board and Confetti, and by applying incorrectly the three year language as delineated in R.I. G.L. § 3-5-21; (2) using evidence that did not demonstrate any disruptive incidents of a legally significant nature between the time of the August 6, 1999 hearing and the December 1999 liquor license renewal hearing; (3) considering the highly prejudicial evidence of a murder that was never causally connected to Confetti and thereby relying upon that evidence to revoke Confetti's liquor license; (4) impermissibly commingling liquor license renewal proceedings with liquor license revocation proceedings, resulting in Confetti being denied the less severe sanctions; and (5) exceeding its authority and jurisdiction by reopening license renewal hearings that had been concluded, rather than instituting separate revocation proceedings, resulting in Confetti being denied the less severe sanctions.
In response, the DBR found (1) they were not estopped to hear evidence of alleged prior incidents, even though there was an agreement between the Board and Confetti, and they were allowed to consider three years by the language delineated in R.I. G.L. § 3-5-21; (2) they were not limited to hearing evidence between the time of the August 6, 1999 hearing and the December 1999 liquor license renewal hearing; (3) the evidence of a murder was causally connected to Confetti, not highly prejudicial to their consideration; (4) they did not commingle the liquor license renewal proceedings with liquor license revocation proceedings as they used the proper "for cause" standard; and (5) they did not exceed their authority and jurisdiction by reopening license renewal hearings that had been concluded, rather than instituting separate revocation proceedings.
 Standard of Review
This Court will review the decision of the DBR pursuant to R.I. G.L. § 42-35-15(g), which provides that when reviewing a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency with regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the DBR's decision. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). `Substantial evidence' is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than did the agency. Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. This Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority v. Rhode Island Labor Relations Board,650 A.2d 479, 485 (R.I. 1994).
 Review of Liquor Control Administrator's Decision
Under G.L. 1956 § 3-5-15, local licensing authorities, such as the Board, possess the right, power, and jurisdiction to issue liquor licenses. All decisions of the issuing authority are reviewable de novo by the DBR/LCA. See G.L. 1956 § 3-7-21 (1994 Cum. Supp.); see also Hallene v. Smith, 98 R.I. 360, 365, 201 A.2d 921, 924 (1964) (licensees entitled to de novo, rather than appellate, review of local board's decision). A hearing is required by law when the applicant appeals to the Liquor Control Administrator. G.L. § 3-7-21. The Superior Court may subsequently review decisions of the Administrator under the Administrative Procedures Act, G.L. § 42-35-15. See Sunny Day Restaurant, Inc. v. Beacon Restaurant, Inc., 103 R.I. 707, 708,241 A.2d 295, 296 (1968) (tracing avenue of appeals for liquor license applications). This review, however, is limited in scope, allowing for reversal or modification of agency action only in specifically enumerated circumstances. See G.L. § 42-35-15 (g).
In contrast, the issuing authority enjoys broad discretion when making an initial determination to grant a liquor license application. G.L. § 3-5-19; see also Board of Police Commissioners v. Reynolds,86 R.I. 172, 176, 133 A.2d 737, 741 (1957); Casala v. Dio, 65 R.I. at 100, 13 A.2d at 695 (1940). This Court's review of decisions made by DBR, either affirming or reversing the local board, focuses on whether DBR has abused that discretion. When reviewing a ruling of the issuing authority granting or refusing a liquor license application, the Court should review the evidence, not to weigh it or pass upon credibility, but to ascertain whether there is any legal evidence to support the agency's ruling. The Castle, 19 Greenough Place v. City of Newport, 63 R.I. 493, 495, 9 A.2d 710, 711 (1939). Because decisions of the local licensing authority are reviewable de novo (see G.L. § 3-7-21) any discretion resting in the former necessarily exists in the latter as well. See Baginski v. Alcoholic Beverage Commissioner, 62 R.I. 176, 182-83,4 A.2d 265, 268 (1939) (interpreting statutory language allowing DBR to review issuing authority decision and affirm, reverse or modify "as to it shall seem proper," thus granting Administrator same discretion as issuing authority
 Liquor License Renewal Revocation, and Legally Competent Evidence
A threshold issue is whether the DBR applied the correct legal standard. The appellant argues that DBR impermissibly commingled liquor license renewal proceedings with liquor license revocation proceedings, resulting in Confetti being denied the less severe sanctions.
There is a distinction among the issuance, suspension, revocation or renewal of liquor licenses. With respect to such issuances, suspensions, revocations, or rewards, the director of the DBR has the power of review of same. G.L. 1956 § 3-7-21, entitled "Appeals from the local boards to director," states in pertinent part:
 "(a) Upon the application of any petitioner for a license, or of any person authorized to protest against the granting of a license, including those persons granted standing pursuant to § 3-5-19, or upon the application of any license has been revoked or suspended by any local board or authority, the director has the right to review the decision of any local board, and after hearing, to confirm or reverse the decision of the local board in whole or in part, and to make any decision or order he or she considers proper. . . ."
With respect to revocation or suspension of a license, G.L. 1956 § 3-5-21, states in pertinent part:
 "(a) Every license is subject to revocation or suspension and a license is subject to fine by the board or official issuing the license, or by the department . . . on its own motion, for breach by the holder of the license of the conditions on which it was issued or for violation by the holder of the license of any rule or regulation applicable, or for breach of any provisions of this section. . . ." (Emphasis added.)
Furthermore, G.L. 1956 § 3-5-23, entitled "Revocation of license for criminal offenses or disorderly conditions — Actions on bond," states in pertinent part:
 "(b) If any licensed person permits the house or place where he or she is licensed to sell beverages under the provisions of this title to become disorderly as to annoy and disturb the persons inhabiting or residing in the neighborhood, or permits any gambling or unlawful gaming to be carried on in the neighborhood, or permit any of the laws of this state to be violated in the neighborhood . . . he or she may be summoned before the board, body, or official which issued his or her license and before the department . . . then the board, body or official may suspend or revoke the license or enter another order. . . ." (Emphasis added.)
With respect to renewal of liquor licenses, G.L. 1956 § 3-7-6, provides in pertinent part:
 "[t]he holder of a Class A, Class B . . . license who applies before October 1 in any licensing period is prima facie entitled to renewal to the extent that the license is issuable under § 3-7-21. A person whose application has been rejected by the local licensing authorities shall, for the purpose of license quotas under § 3-5-16, be deemed to have been granted a license until the period for appeal has been dismissed. . . ." (Emphasis added.)
Thus, a distinction exists between the guidelines governing the issuance of liquor licenses, and their suspension, revocation or renewal. See Casala, 13 A.2d 693, 695 (1940) (denial of application should not be confused with revocation). In order to suspend or revoke a liquor license, there must be a showing that the holder has breached some applicable rule or regulation. G.L. § 3-5-21. However, under G.L. § 3-7-6, a license holder applying for renewal may be rejected only "for cause." See Chernov Enterprises, Inc. v. Sarkas, 109 R.I. 283, 287,284 A.2d 61, 63 (1971).
Our Supreme Court has interpreted G.L. § 3-7-6, regarding license renewals, with respect to applying the "for cause" standard:
 "[I]n establishing cause as the controlling standard, the Legislature obviously did not intend to confer upon the licensing authority a limitless control or to permit the exercise of an unbridled discretion . . . a cause, to justify action, must be legally sufficient, that is to say, it must be bottomed upon substantial grounds and be established by legally competent evidence." Chernov, 284 A.2d at 63. (Emphasis added.)
Following Chernov, the Rhode Island Supreme Court has consistently held that disorderly conduct, both inside and outside the licensed premises, constituted the `legally competent evidence' requirement of the `for cause' standard. For example, disorderly conduct has been considered in applications for renewal of liquor licenses. In Edge-January, Inc. v. Pastore, 430 A.2d 1063 (R.I. 1981), the series of disorderly activities which emanated from the premises constituted legally competent evidence for the inference that the licensed premises was the catalyst bringing about the disruptive incidence in the neighborhood. See also Furtado v. Sarkas, 373 A.2d 169 (R.I. 1977). In another case involving an application for renewal, the Rhode Island Supreme Court also included "undesirable activities" in describing disorderly conduct. A.J.C. Enterprises, Inc. v. Pastore, 473 A.2d 269 (R.I. 1984) Therefore, consideration of disorderly conduct is not limited to revocation of a liquor license under G.L. 1956 § 3-5-21 and G.L. 1956 § 3-5-23. Thus, with respect to the denial of Confetti's liquor license renewal, the "for cause" standard of § 3-7-6, delineated in Chernov, was supported by legally competent evidence of disorderly conduct. Accordingly, DBR's decision was made upon lawful procedure and not affected by error of law.
 Three Year Language
Additionally, appellant argues that § 3-5-21 should not be construed to mean that the Board or DBR should consider incidents within a three year period for renewal applications. In the instant matter, DBR found that it could consider incidents within a three year period due to its interpretation of the statute.
G.L. 1956 § 3-5-21, entitled "Revocation or suspension of licenses — Fines for violating conditions of license," states in pertinent part:
 "(b) . . . For the purposes of this section, any offense committed by a licensee three (3) years after a previous offense shall be considered a first offense." (Emphasis added.)
Although the statute is not explicit in stating the exact time a license may be reviewed, DBR's administrative interpretation is entitled to great deference. The law in Rhode Island is well-settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency. In re John F. Lallo, 768 A.2d 921 (R.I. 2001). "[W]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." Gallison v. Bristol School Committee, 493 A.2d 164, 166 (R.I. 1985). In interpreting a legislative enactment, the reviewing court must determine the Legislature's intent and attribute to the enactment the meaning most consistent with its policies or obvious purposes. Town of North Kingstown v. Albert et al., 767 A.2d 659 (R.I. 2001) (citing Brennan v. Kirby,529 A.2d 633, 637 (R.I. 1987)). "In doing so, [t]his Court will not construe a statute to reach an absurd result." Id. (citing State v. Flores, 714 A.2d 581, 583 (R.I. 1998) (quoting Kaya v. Partington,681 A.2d 256, 261 (R.I. 1996)).
The DBR construed the language referring to three years in § 3-5-21
(b) to mean that a licensee may be reviewed in three year increments. To interpret the statute otherwise would render an absurd result, as after a three year period with no offense concludes, an offense subsequent to that three year period becomes a first offense. Thus, an offense prior to the intervening three year period would be effectively disregarded. Accordingly, DBR's interpretation of the statute did not constitute an abuse of discretion or error of law.
 Agreement with Local Board
Additionally, appellant argues that DBR must honor Confetti's agreement with the local Board. The agreement effectively consisted of Confetti, upon admitting certain facts and waiving any appeal to the State Liquor Control Administrator, accepting a suspension and fine in exchange for the Board's disposing of a variety of offenses that occurred between July 24, 1997 and June 6, 1999. (See excerpt from August 6, 1999 Tr. Decision at 13.) Appellant's argument is that honoring the agreement would limit the DBR to considering evidence only after June 6, 1999. The DBR found that it is not bound by all actions taken by the local Board with respect to liquor licenses.
The DBR has independent power of the local Board to review a liquor license. G.L. 1956 § 3-2-2, entitled "Supervision," states in pertinent part:
 "(c) The department has the power at any time to issue, renew, revoke and cancel all manufacturers', wholesalers' and retailers' Class G licenses and permits as are provided for by this title. . . ."[2]
(Emphasis added.)
Furthermore, G.L. 1956 § 3-5-23, entitled "Revocation of license for criminal offenses or disorderly conditions — Actions on bond," states in pertinent part:
 "(b) If any person permits the house or place where he or she is licensed to sell beverages under the provisions of this title to become disorderly as to annoy and disturb the persons inhabiting or residing in the neighborhood, or permits any gambling or unlawful gaming . . ., or permits any of the laws of the state to be violated . . ., he or she may be summoned before the board, body, or official which issued his or her license and before the department, when he or she and the witnesses for and against him or her may be heard. . . ." (Emphasis added.)
The Rhode Island Supreme Court has addressed the power of DBR. In Baginski v. Alcoholic Beverage Commission, the Court held that the state liquor commission's (DBR's) power is as broad and comprehensive as the statute itself and establishes it in effect as a "state super licensing board." 62 R.I. 176, 4 A.2d 265 (1939). As such, the commission has a right in its sound discretion to hear cases de novo either in whole or in part. Id. Also, in Belconis v. Brewster, the Court held that the expression "board, body or official" in § 3-5-23 included the liquor control administrator, and that DBR had the power and jurisdiction of its own motion to revoke such license. 65 R.I. 279, 14 A.2d 701 (1940). Thus, in the instant matter, the DBR has the power and jurisdiction to initiate review or revoke a liquor license on its own motion, regardless of any agreement with the local Board.
Further, Confetti neither argued that the DBR lacks the power to hear cases de novo, nor objected to the testimony at the post-hearing regarding the testimony received from the local Board members regarding the agreement. In fact, counsel for Confetti conceded:
 "I understand that within your discretion, you can take anything up sua sponte. I acknowledge that you can do that, but I'm saying it's fundamentally unfair, it prejudices any license holder, and we lose a step in the process. . . ." (Nov. 28, 2000 Tr. at 18.)
Accordingly, the DBR, pursuant to its statutory, could have initiated a hearing de novo regardless of whether it involved the local board or whether it involved a renewal, revocation, or suspension. In doing so, DBR could have considered evidence that it deemed proper for such a hearing. Therefore, DBR did not abuse its discretion in allowing evidence of incidents covered under the agreement with the local Board.
 Equitable Estoppel
Appellant further argues that equitable estoppel applies to the agreement between Confetti and the local Board. "For the doctrine of equitable estoppel, or estoppel in pais, to apply, it must be established that: first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and second, that such representation or conduct in fact did induce the other to act or fail to act to his injury." El Morrocco Club, Inc. v. Richardson, 746 A.2d 1228 (R.I. 2000) (citing Providence Teachers Union v. Providence School Board, 689 A.2d 388, 391-92 (R.I. 1997)) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)). Moreover, "[t]he key element of an estoppel is intentionally induced prejudicial reliance." Id. (citing East Greenwich Yacht Club v. Coastal Resources Management Council, 118 R.I. 559, 568, 376 A.2d 682, 686 (1977)).
The record reflects that the subject agreement included some evidence of reliance:
 "Mr. Dettore: . . . [W]e're going to dispose of any cases that are pending right now before the Board. This would include a variety of offenses which commenced July 24, 1997 and up to and including June 6, 1999 . . . we've agreed to, on an admission of sufficient facts by the club and a waiver of any appeal to the State Liquor Control Administration,. . . . The City would probably, at least on some of the offenses, sustain its burden with reference to some of those violations. Is that your understanding, Mr. Manni?
 Mr. Manni: Yes, it is. . . .
 Mr. Dettore: On behalf of J. Aloisio Enterprises, you also waive any appeal rights that you might have to the State Liquor Administration?
 Mr. Aloisio: Correct. . . ." (August 6, 1999 Tr. at 2-4.)
The Board agreed to dispose of cases pending for the time period between July 24, 1997 to June 6, 1999 in lieu of Confetti's admission of certain facts and Confetti's waiver of appeal to DBR. There appears to be an affirmative representation or equivalent conduct on the part of the local Board directed to Confetti for the purpose of inducing (Confetti) to act or fail to act in reliance thereon; and that such representation or conduct in fact did induce (Confetti) to act or fail to act to his injury. The local Board is an administrative agency with quasi-judicial powers. The doctrine of equitable estoppel cannot be invoked against a governmental entity like the Board when, as here, the alleged representations or conduct relied upon was in conflict with the authority of the DBR. The DBR has broad power of review over any local board's decision. G.L. § 3-5-21 clearly states, in pertinent part:
 ". . . The director has the right to review the decision of any local board, and after hearing, to confirm or reverse the decision of the local board in whole or in part, and to make any decision or order he or she considers proper. . . ."
Accordingly, DBR was not limited to considering incidents that occurred between August 6, 1999 and December 1999 (outside the agreement). Moreover, the Board admitted to the agreement, but their decision not to renew was based on incidents between August 6, 1999 and December 1999.[3]
Nevertheless, DBR did not abuse its discretion in considering incidents, whether under agreement between Confetti and the local Board or not, because of its broad power to review de novo. Therefore, the doctrine of equitable estoppel should not be applied against the Board.
 Post — August 1999 Evidence
Confetti argues that DBR exceeded its authority and jurisdiction by reopening license renewal hearings that had been concluded, rather than instituting revocation proceedings, resulting in Confetti being denied the less severe sanctions. The DBR claims that its office and local boards ". . . must be able to look at disorderly incidents in a continuum to gain perspective rather than be handcuffed in a position where each incident is viewed in a vacuum." Final Decision of the DBR, J. Aloisio Enterprises, Inc., d/b/a Club Confetti v. City of Providence, Board of Licenses, LCA-PR-00-01, at 27 January 5, 2001. The DBR also states that such a broad review can be in the best interest of the licensees, who might be attempting to demonstrate improving situations. Id. Additionally, DBR noted that it is in the best interests of the public and judicial economy to include the incidents (over half a dozen) reported since the hearings because a new hearing after each incident, and appeals, would complicate adjudication and potentially compromise public safety. Id. Evidence may be received from the period of an application for renewal until the appeal is dismissed. G.L. § 3-7-6
clearly states, in pertinent part:
 ". . . A person whose application has been rejected by the local licensing authorities shall, for the purpose of license quotas under § 3-5-16, be deemed to have been granted a license until the period for an appeal has expired or until his or her appeal has been dismissed. . . ." (Emphasis added.)
Since the appeal was pending, the decision to accept additional evidence was within the Director's discretion. Here, there is no dispute that the appeal was not dismissed during this time. A stay was granted, and the license operated until November 28, 2000, when the stay was lifted. Also, as stated earlier, Confetti did not object to the testimony at the September 14, 2000 post-hearing regarding the testimony received from the local Board members regarding the agreement.
In addition, DBR has demonstrated that it has taken evidence of disorderly conduct that had occurred since the initial hearing was held at the local level. See e.g., Bourbon Street, Inc. v. Newport Bd. of License Cmm'rs, C.A. 99-259, December 6, 1999, Thunberg, J. Evidence of incidents during the year 2000 could only go under the 2000 license renewal application because there was no 2000 license per se. Therefore, DBR did not abuse its discretion in hearing evidence of incidents after August 1999.
 Evidence of Murder
Confetti further argues that the Administrator was wrong to allow the evidence of the murder because it was received after the hearings concluded, there was no direct connection between the murder and its establishment, and the evidence was highly prejudicial. The Board found that the evidence was not clearly erroneous, was causally connected, and non-prejudicial.
Rhode Island has consistently held that disorderly conduct outside and connected to a licensee's establishment constitutes credible evidence. In Cesaroni v. Smith, the court held that, "a licensee assumes an obligation to affirmatively supervise the conduct of his patrons as to preclude the generation therefrom of the conditions in the neighborhood of like character to conditions that would result from maintenance of a nuisance therein." 202 A.2d 292, 297 (R.I. 1964). In Cesaroni, evidence susceptible of reasonable inference was held admissible when petitioner's establishment was disorderly within the meaning of statute because conditions developed outside the premises that disturbed and offended residents in the neighborhood. Id. at 299. Again, in Furtado v. Sarkas, the court held that reasonable inferences were supported by findings that disturbances commenced within licensed premises and spilled out onto sidewalk and that premises became disorderly so as to annoy and disturb persons inhabiting or residing in the neighborhood. 373 A.2d 169 (R.I. 1977). Similarly, in Edge-January, Inc., inferences were properly made that the licensed premises was the catalyst bringing about disruptive incidents in the neighborhood and that the series of disorderly activities in the neighborhood generated from such premises. 430 A.2d 1063
(R.I. 1981). Also, in A.J.C. Enterprises, Inc. v. Pastore, `undesirable activities' occurring outside and around a licensed establishment were sufficient evidence to warrant an inference that they had their origin within to justify an authority's refusal to renew an establishment's license. 473 A.2d 269 (R.I. 1984). Thus, there need not be a direct causational link between incidents occurring outside or nearby a drinking establishment and its patrons. A link can be established when it can be reasonably inferred that the incidents occurred outside a particular establishment and had their origins within that establishment. Edge-January and Sarkas, both supra.
In this case, an offer of proof was made by Mr. McHugh, the city solicitor, as to the following testimony:
 ". . . On what would be November 25, 2000, which was this past Saturday morning, there was a murder which occurred at the corner of Charles and Silver Spring Street, . . . which evidence before you has been that it is the parking lot used by Confetti for its patrons, and Confettii was open that night . . . two girls and the victim were in the Club Confetti and . . . [a]t one point, a group that was with the shooter, some of whom later interviewed, surrounded the victim on the dance floor . . . [t]he victim decided to leave and he left with the two girls, and the three of them walked, . . . [t]o get in their car, . . . and as they got there, a male in a hooded sweatshirt came up behind them brandishing a gun . . . and shot the male five times . . . the girls identified shooter as the person who pushed the victim twice inside Club Confetti that night. . . ." (Nov. 28, 2000 Tr. at 5-6.)
Clearly, the above evidence provides a legally sufficient connection between the disorderly incidents and the establishment. The DBR points to the well-established nexus between the incidents involving Confetti patrons and the Ames parking lot in the record and that Confetti admitted this nexus regularly. (See March 16, 200 Tr. at 41-41; March 17, 2000 Tr. at 21-22; March 17, 2000 Tr. at 97; City Exhibit 8; Post Hearing Exhibit 3.) Aloisio admitted Confetti rents the lot and, "funnel[s] the patrons right from the doors right to the Ames parking lot." (May 2, 2000 Tr. at 68.) The record further reflects that Confetti admitted deploying personnel to clean the Ames parking lot (April 6, 2000 Tr. at 179) and posts security personnel there to ensure patrons leave the lots in a safe and efficient manner. (May 2, 2000 Tr. at 41-44, 54, 73-74, and 85.) Although the hearing officer possessed the discretion to exclude this relevant evidence if he considered it unfairly prejudicial, under Rhode Island Rule of Evidence, Rule 403, he determined that it was not prejudicial. The ultimate determination of the effect of evidence is within the trial judge's (or hearing officer's) discretion. State v. Grundy, 582 A.2d 1166 (R.I. 1990). Therefore, the DBR was neither clearly erroneous, nor abused its discretion in considering the murder in the parking lot in not renewing Confetti's liquor license.
Furthermore, appellant repeatedly contends that Confetti was diligent in its attempts to control and prevent disorderly conduct. However, Confetti does not argue that "it did not permit or allow its premises to become disorderly," as were the arguments of the defendants in Mathieu and Furtado, both supra. This evidence is not disputed by the record evidence in that Confetti maintained security personnel and hired six detail police officers of the City, and additional staff on Friday and Saturday nights to attempt to prevent disorderly conduct among the patrons inside and outside Confetti in response to complaints by the neighborhood residents. Confetti argues that the record contains undisputed testimony that the managers of Confetti worked with the police when a fight or disturbance occurred among the patrons and that their security personnel and managers were cooperative with the police officers and open to suggestions on how to address the problems of fighting and disorderly conduct.
However, DBR found that despite Confetti's efforts, the DBR record is supported with credible testimony concerning the resulting disorderly conduct among the patrons of Confetti outside the licensed premises. DBR heard testimony from neighbors, employees, council members of the City, police officers of the City, and Confetti's owner, John Aloisio. The DBR concluded that although Confetti diligently addressed the fights and disorderly conduct among patrons, Confetti has neither maintained order among the patrons nor solved the disturbance problem, despite its good faith efforts to control the behavior of its patrons. DBR concluded that the record contains sufficient evidence to support the
DBR's finding that Confetti failed to control the fighting and disorderly conduct. This conduct, the DBR found, created a disturbance and annoyance to the neighborhood residents, which rose to the level of the "just cause" standard in violation of G.L. § 3-7-6.
After review of the entire record, this Court finds that the DBR had before it substantial, probative, and reliable evidence to uphold the non-renewal of Confetti's license. The DBR had substantial evidence before it to satisfy the "for cause" standard warranting the non-renewal of Confetti' Class B alcoholic beverage license as required by R.I. G.L. § 3-7-6. This Court further finds that the decision of the DBR neither constitutes an error of law nor an abuse of discretion and that substantial rights of John Aloisio and J. Aloisio Enterprises, Inc. have not been prejudiced. Accordingly, the January 5, 2001 decision of the DBR is affirmed.
Counsel shall submit an appropriate judgment for entry after notice.
[1] See Final Decision of the DBR, J. Aloisio Enterprises, Inc., d/b/a Club Confetti v. City of Providence, Board of Licenses, LCA-PR-00-01, January 5, 2001.
[2] Although § 3-2-2 merely mentions a "Class G license," §3-5-21 clearly states "any license."
[3] Two Board members testified that although they voted for the agreement, they were of the understanding that the agreement was not going to prohibit them from voting against Confetti's renewal a few months later, which they did. (September 14, 2000 Tr. at 5-7.)