ARTHUR R. CLARK *vs.* ALCOHOLIC BEVERAGE COMMISSION.

SAME *vs.* SAME.

JANUARY 22, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

MURDOCK, J.   This is a petition for a writ of *certiorari* to review the action of the Alcoholic Beverage Commission in certifying to the Board of Public Safety of the City of Providence that the latter's granting of a Class C license to the petitioner had been reversed by said commission. Accompanying the petition for a writ of *certiorari* is a petition to establish the correctness of the records of the respondent commission, by parol and other evidence.   As the petition for the writ challenges the correctness of respondent's record and also raises a question of jurisdiction, parol evidence will be received on the petition for the writ of *certiorari* to aid in the determination of the questions thus raised.   *McCarthy* v. *Board of Aldermen*, 38 R. I. 385.   The petition to establish the correctness of the records of the respondent commission is denied and dismissed.

The respondent commission was created by Chapter 2013 of the Public Laws 1933.   Said chapter is entitled: "An Act to promote temperance in the use of alcoholic beverages and to control the manufacture, transportation, possession and sale of such beverages."   Wide powers of regulation and supervision are vested in said commission in carrying out the general purposes of the act.   Each member of the commission is authorized to administer oaths, and the commission, by *subpoena* signed by its secretary, may summon witnesses and compel them to attend and testify in like manner as in either the supreme or superior courts.   It has the power to compel the production of documents, records or other legal evidence, which may be necessary for the determination of any question, by issuing a *subpoena duces*

*tecum*, and also the power to punish for contempt of its processes in like manner as contempts may be punished in the supreme or superior courts.

The right to issue retail licenses for the sale of alcoholic beverages is vested in local licensing boards. Section 14 of the act provides that, upon the application of a petitioner for a license or of any person authorized to protest against the granting of a license, the commission shall have the right to review the decision of any local board and, after a hearing, confirm or reverse the same in whole or in part.

The following facts appear from the records of the commission and the parol evidence taken at the hearing before us. On May 3, 1933, the petitioner, Arthur R. Clark, made application to the Board of Public Safety of the City of Providence, the local licensing board for said city, for a retail Class C beverage license for the premises at No. 880 Broad street in the city of Providence. The application after being duly advertised was in order for hearing on July 6th. Patrick P. Curran, Esq., then, as now, chairman of the respondent commission, with others, protested against the granting of the license to the petitioner for said premises, stating that he was the owner of adjacent premises and that he protested in his personal capacity and entirely in his own interest. After several postponements, the application of the petitioner was finally heard and granted on August 10th.

On August 16th there was filed with the respondent commission in behalf of Elizabeth A. Hardie an application for review of the decision of the Board of Public Safety of the City of Providence. The application for review was assigned for hearing to August 22 and the following appears in the records of the respondent commission: "The appeal of Elizabeth A. Hardie from the action of the board of public safety of Providence in granting a retailer's Class C beverage license to Arthur R. Clark for the premises No. 880 Broad Street, Providence, was before the commission. The chairman of this commission stated that he was personally interested in the application before the commission and

could not sit in consideration of it. The contention of Mrs. Hardie was presented by Mr. Curran and that of Arthur R. Clark by Edmund W. Flynn, Esq. The matter was heard by the commission, exclusive of the chairman, and was held for advisement."

On August 23rd said application was continued until the next meeting of the commission; similar action was taken on August 25th and 28th. Under the date of September 1st, the following appears in the records of the commission: "It was moved by Mr. Daneker and seconded by Mr. Lafayette and voted that the following resolution be passed:

" 'Elizabeth A. Hardie, petitioner to this commission to review a decision of the board of public safety of the city of Providence, (which decision was rendered within 30 days next before the filing of said petition with this commission, and said petition showing that the board of public safety of the city of Providence on, to wit: August 10, 1933, granted a retailer's Class C alcoholic beverage license to Arthur R. Clark for the premises No. 880 Broad Street, Providence,) the parties having appeared and the board of public safety having also appeared, thereupon on consideration of the matter this commission reverses the decision of the board of public safety and decides that said board ought to deny the said application of Arthur R. Clark for a retailer's Class C beverage license for the premises No. 880 Broad Street, Providence, and directs the board of public safety to enter upon its records that said application is denied.' "

From the oral testimony it appears that on September 1st, when the application of Elizabeth A. Hardie was first considered by the commission, the chairman withdrew and Frank Mauran, Jr. acted in his stead. On the question of granting the application of Elizabeth A. Hardie to review and reverse the action of the Board of Public Safety, com-

missioners Daneker and Lafayette voted in the affirmative and commissioners Mauran and Costello in the negative. Whereupon Mr. Mauran went to inform the chairman of what had transpired and then left to go on a previously planned vacation. The chairman then resumed his position on the commission and after the transaction of some other business the application of Elizabeth A. Hardie was again considered and by a vote of three to one—the chairman voting in the affirmative—the application was granted.

There appears to have been some confusion or at least uncertainty in the minds of the four members of the commission who first voted on the question as to the legal effect of the tie vote. Mr. Mauran testified that according to his recollection he said to Mr. Curran, when he notified him of the result of the vote: "The vote is two to two; that means nothing is done, no positive action. The order of the Board of Public Safety would stand. There was no positive vote to upset it. You can decide what you please about it, or something to that effect." Mr. Mauran further said that in his own mind the matter was settled; otherwise he would not have left the meeting.

In view of the wide powers given the commission and the nature of the duties imposed upon it by the statute, it is clear that in the exercise of some of these powers it acts as a quasi-judicial body. When sitting as a board of review it is unquestionably acting in that capacity and as such is bound by the same fundamental principles that are binding upon all judicial bodies. Chief among these is that the members thereof shall be free from all personal interest in the matter under consideration. This principle rests on the obvious proposition that one may not at the same time act as both judge and advocate. That the chairman was disqualified to participate in the determination of the application of Elizabeth A. Hardie for review of the action of the Board of Public Safety is established by his own admission and by his conduct.

It follows therefore that the purported decision of the commission as appears in its records reversing the action of the Board of Public Safety is a nullity. There is no merit in the contention of counsel for the commission that, even though the vote of the chairman be disregarded, the action of the commission should be allowed to stand because it was taken by a majority thereof present and qualified to act. There is nothing in the record to indicate that the three members of the commission, exclusive of the chairman, intended to take further action in the matter after the departure of Mr. Mauran, even though the rules of orderly procedure would permit such action. Were it not for the return of the chairman to sit as a member of the commission, the vote would undoubtedly have remained as first taken. The legal effect of the tie vote was to leave undisturbed the granting of a license to the petitioner by the Board of Public Safety.

The counsel for the commission earnestly urges that the petition for the writ presents only a moot question for the reason that the license of the petitioner—assuming that he was entitled to the same—expired by statutory limitation on December 1, 1933. In *Adams* v. *Union Railroad Co.*, 21 R. I. 134, a moot case is defined as: "one which seeks to determine an abstract question which does not rest upon existing facts or rights." The petition rests upon the ground that the petitioner was deprived of a right by the unlawful action of the respondent commission and he seeks a vindication of that right. The fact that he will derive no practical benefit as to his license for the year 1933 ought not to bar him from a determination of his right to the same, especially when a refusal to hear him probably would affect a future application to the Board of Public Safety for a license for the same premises. *In re Goodman*, 146 N. Y. 284. It is improbable that said board would ignore the recorded action of the Alcoholic Beverage Commission and grant him a license for 1934. In any event he ought not to be faced with this handicap in any future application to the Board of Public Safety.

There is a further reason why the question presented by the petitioner should be considered. The Alcoholic Beverage Commission was created for the purpose of regulating and controlling a business which experience has taught must be strictly controlled in the interest of public health, morals and safety. The public has therefore a vital interest in the determination of the manner in which the Alcoholic Beverage Commission should perform the duties imposed upon it by the statute and in the correctness of the records of its proceedings.

For the foregoing reasons, so much of the record of the Alcoholic Beverage Commission, as declares that the application of Elizabeth A. Hardie was granted and that the action of the Board of Public Safety granting a Class C license to the petitioner was reversed, is quashed.

*William S. Flynn, Edmund W. Flynn,* for petitioner.
*William G. Troy,* for respondents.