JOHN BAGINSKI *vs.* ALCOHOLIC BEVERAGE COMMISSION.

FEBRUARY 9, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a petition for a writ of *certiorari.* The petitioner is the applicant for a class C license to sell intoxicating beverages at 62 Putnam street in the city of Providence. The respondents are Michael F. Costello,

James S. Daneker and Dominic P. Turco, who are erroneously alleged in the petition to be the Alcoholic Beverage Commission of the state of Rhode Island, whereas they constitute the Division of Intoxicating Beverages. However, the respondents did not object to this misnomer and the hearing on the petition before us proceeded under the petition as filed. For convenience then, we shall hereafter refer to the respondents as the commission.

On October 21, 1938, after a hearing which had consumed several days, the commission reversed a decision of the bureau of police and fire of the city of Providence, granting a class C liquor license to the petitioner, and directed the bureau to revoke it. The bureau had previously, on September 8, 1938, granted the license over the objection, duly filed at its office, of certain persons alleging themselves to be the owners of the greater part of the land within two hundred feet of 62 Putnam street. These objectors thereupon, in accordance with the provisions of public laws 1933, chapter 2013, sec. 14, as amended, applied to the state commission to review this decision.

At the hearing before it on this application, the commission did not confine itself to the record made before the bureau but took testimony and received and considered the objection of additional landowners, within two hundred feet of 62 Putnam street, who had not filed their objection with the bureau. On all the evidence thus brought to the attention of the commission, it decided that the bureau had no authority to grant the petitioner a license, and that it should be revoked.

The petitioner alleges in his petition that the commission substantially heard his application for a license *de novo* and that under said sec 14 it had no such authority, but merely had the authority to review the decision of the bureau of police and fire on the record made before that body. The petitioner contended in his argument before us and in his brief that the review which the legislature

intended by sec. 14 was the narrow right of review usually exercised by appellate courts and more particularly the right usually exercised by this court on *certiorari*. In other words, if we correctly understand him, he argues that the legislature used the word "review" in sec. 14 in its technical sense.

Counsel for the commission and counsel for the remonstrants contend that such a narrow construction is unreasonable and if adopted, will nullify the primary object which the legislature had in mind when it set up the commission as a reviewing body over the local boards, namely, the establishment of effective state supervision and control over such boards in granting and revoking liquor licenses and in otherwise regulating the traffic in intoxicating liquors.

They urge, therefore, that, necessarily, the scope of the commission's power on an application for review is wide and comprehensive and is substantially a grant of authority to hear the matter before it *de novo,* both on the facts and the law, if that seems to it essential to a proper understanding and an intelligent final decision of the cause. And in this connection they point out that the record which comes up to the commission from the local board on such application for review is of the scantiest kind, containing little, if anything, more than a bare statement of the board's decision. From this they argue that a technical review of the local board's decision becomes, in the nature of things, a practical impossibility and that, if the commission's review is to be thus restricted, it is well nigh meaningless and, in most cases, will be entirely lacking in efficacy.

The above recital of the contentions of counsel is not in the exact language of counsel for the commission and counsel for the remonstrants, but, in essence, contains the substance of the points which they make in their briefs. The issue thus joined between the petitioner and the com-

mission finally simmers down to this: Is the commission a reviewing authority over the local boards, solely on questions of law apparent on the record made below, or is it in addition invested with power to rehear the whole matter brought up for review?

The consideration of this question is not free from difficulty. Such difficulty arises from the choice of language employed by the legislative draftsman in sec. 14. If the legislature intended to set up the commission merely to review and correct errors of law of the local board, then the choice of the word "review" in sec. 14 is apt to express that intention. But if chap. 2013, viewed as a whole, clearly indicates an intention of the legislature to establish a broad and comprehensive state control over the traffic in intoxicating liquors and to vest that control in an administrative body, then that body must necessarily be construed to be endowed with power and authority adequate to the full discharge of its duties in the exercise of such control. In that case, the use of the word "review" in sec. 14, if given its narrow, technical meaning in the law of appellate procedure, is inconsistent with the primary intention of the legislature and tends to restrict greatly the measure of control which the state, by its commission, can exercise over the local boards. It will be our purpose in what follows to point out how this difficulty should be resolved.

Chapter 2013 is a familar and well-recognized example of the legitimate exercise of the police power. *Tisdall* v. *Board of Aldermen,* 57 R. I. 96. The act is entitled an act to promote temperance and to control the manufacture, transportation, possession and sale of alcoholic beverages. Its chief purpose may, without question, be said to be the safeguarding of the public health, safety and morals. *Clark* v. *Alcoholic Beverage Commission,* 54 R. I. 126.

The traffic in intoxicating liquors has ever been a prolific source of evils, gravely injurious to the public welfare.

The need of its regulation and control is undisputed. In a search for a system of effective, impartial and uniform regulation and control of this traffic our legislature enacted the above chapter which was later amended by P. L. 1934, chap. 2088. This system is a departure from that which had long existed here prior to the advent of national prohibition. Then the regulation and control of substantially every phase of the liquor traffic was vested exclusively in the local governing bodies. The state exercised over this local administration no administrative supervision or control, except occasionally in some cities and towns the legislature intervened to set up state-appointed license commissions or police commissions with licensing powers; but such commissions were vested with purely local administrative powers only. They were not commissions with state-wide jurisdiction.

Chapter 2013 changed all this. Where, before, the emphasis was exclusively on control locally, now it is predominantly on state control. This is evident in many sections of the act. Running through the entire act is the central idea that the traffic in intoxicating liquors is a problem that is state-wide; and correspondingly, that state supervision and control, either originally in some phases or ultimately in others, alone can adequately cope with it. However, along with the incorporation into the law of this new idea, there has been retained a remnant of local administration. An example of this is the right of local boards to grant and to revoke, at least in the first instance, class C licenses. Such licenses correspond to the retail licenses, popularly known as saloon licenses under the old law. The decisions of the local bodies, granting or refusing to grant such licenses under the old law, gave rise to practically all the decided cases in this court on *certiorari* to such bodies, of which the following early cases are typical: *Deignan* v. *Board of License Comm.*, 16 R. I. 727; *License Comm.* v. *O'Connor*, 17 R. I. 40; *Dexter* v. *Town Council of Cumber-*

*land,* 17 R. I. 222; *Lonsdale Co.* v. *License Comm.,* 18 R. I. 5; *Perkins Horseshoe Co.* v. *Dwyer,* 19 R. I. 488.

An examination of these cases shows that a review of the action of the local bodies by this court was very much restricted. The limits of common law *certiorari* were adhered to, thus leaving to the local body a broad field of action on fact-finding, subject only to control by this court for clear error of law or abuse of discretion. This court did not take testimony in these cases, nor did it weigh the testimony presented to the local body; it confined its examination to the record made below to satisfy itself whether or not the local body had committed error of law.

Under such an unsupervised system of local regulation there was bound to be a lack of uniformity in the manner and method of administering the liquor license law throughout the state, since a great deal depended upon the views of the individuals composing the local boards. In some communities there was rigid regulation and in others there was not. Except for error of law, there was no supervisory authority over such bodies. On questions of fact their decisions were final and their discretion wide.

The wide discretion thus vested in them often resulted, before prohibition, in grave abuses which, as a matter of common knowledge, seriously affected the public welfare. Such knowledge was undoubtedly in the minds of our legislatures when, after the repeal of prohibition, they provided a system of regulation of the liquor traffic in order to prevent, if possible, the return of the evils peculiar to the old system of local regulation.

It was in the light of this knowledge, and motivated by that intention, that the legislature enacted chap. 2013 and subsequent amendments thereto. Whether this statute has accomplished the salutary objects of its enactment, we are not called upon here to say. Our duty and our province is merely to declare whether or not the legislature intended to give broad powers of control and supervision to the

commission which it charged with the administration of the statute.

If we admit the premises that the legislature knew the evils it had to correct and desired to prevent their return; that the old local system of freedom from state supervision, except for errors of law, was a source of some of those evils; and that the legislature desired to establish a uniformity of administration of the law for the purpose of promoting temperance throughout the state, then the conclusion is irresistible that the legislature, which charged the commission with the carrying out of its legislative policy, likewise intended to vest in it the broadest, rather than the narrowest, power over local bodies in order to insure a state-wide conformity to the law. This court has heretofore said that the commission was vested with wide powers of regulation and supervision. *Clark* v. *Alcoholic Beverage Commission, supra.*

We cannot say therefore that, in employing the word "review" in sec. 14, the legislature intended to employ it in the narrow technical sense urged by the petitioner. Our conception of this power of review is that it is as broad and comprehensive as the statute itself and establishes the alcoholic beverage commission as, in effect, a state superlicensing board; and that, as such, the commission has the right in its sound discretion to hear cases *de novo* either in whole or in part.

We are confirmed and strengthened in this opinion by certain language in the section which plainly implies that the commission is to do something more than merely review and correct errors of law in the action of the local board. The right of review is thus expressed in sec. 14 as follows: " . . . the commission shall have the right to review the decision of any local board and after hearing to confirm or reverse the same in whole or in part, and to make such decision or order as to it shall seem proper . . . ." It is significant that, by this language, the legis-

lature did not limit the power of the commission to a mere review of errors of law, as it might easily have done, but expressly gave the commission the broad power, "to make such decision or order *as to it shall seem proper."* (italics ours)

Ordinarily, with administrative tribunals such as the alcoholic beverage commission, it would be unlikely that the legislature would vest in them the authority merely to review and correct errors of law. That function is not usually lodged in an administrative body, except in connection with the power to make its own findings of fact either from evidence taken before it or coming to it with the record from another tribunal. And then, while its findings of facts are sometimes declared by statute to be final, its holdings of law never can be, as they are subject to review by this court on *certiorari,* if no appeal from its decision is provided in the statute.

If the petitioner's view in the instant case were sound, there would be available two reviews of errors of law, first by the commission, and finally by this court, but no review of the facts found by the local board. This would leave the matter where it formerly was when *certiorari* was the usual and only method available for reviewing the action of the local boards. This is clearly not a reasonable construction of the legislature's language and not at all consistent with the legislature's own mandatory rule of construction incorporated in the act itself in sec. 81. That section reads in part: "This act shall be construed liberally in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages."

In compliance with this mandate, we construe the word "review" to be used in a more comprehensive sense than the technical one urged by the petitioner, because such a narrow construction would tend, in our opinion, to re-

184

tard rather than to promote the purposes of the act and conceivably might tend to diminish rather than to enhance the reasonable control of the liquor traffic throughout the state.

On this view, the commission did not err in hearing testimony and receiving additional evidence of objectors owning land within two hundred feet of the petitioner's premises at 62 Putnam street. The record thus made before the commission clearly shows that, in accordance with sec. 21 of chap. 2013, the owners of the greater part of the land within two hundred feet of such location object to the granting of this license. This being so, there was nothing left for the commission to do but to direct the bureau to revoke the license previously granted to the petitioner, as there was no jurisdiction in either the bureau or the commission to grant such a license in the face of such undisputed evidence. *Perkins Horseshoe Co.* v. *Dwyer, supra.*

As there is no error in the action taken by the commission, the petition is denied and the writ of *certiorari* which was issued is quashed.

*Kirshenbaum & Kirshenbaum,* for petitioner.

*William G. Troy,* Legal Adviser, for Division of Intoxicating Beverages.

*Flynn & Leighton,* for remonstrants.