[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Green Point Liquors, Inc. ("Green Point") appeals the decision of the Department of Business Regulation ("DBR"), declaring Green Point's Class A liquor license null and void and ordering the Board of Licenses, City of Providence ("Board of Licenses"), to cancel said license. This Court has jurisdiction over this appeal pursuant to G.L. § 42-35-15, which allows a party to appeal a final decision of the Department of Business Regulation to the Superior Court within 30 days after the agency mails notice of the final decision.
 Facts and Travel
This matter arises out of DBR's intervention in an appeal from the Board of Licenses to DBR originally brought by The Da Vinci Center for Community Progress, Inc. ("The Da Vinci Center"). The Da Vinci Center appealed a decision of the Board of Licenses, allowing the transfer of a Class A liquor license from The Wine Merchant, Inc. ("Wine Merchant") to Green Point. Although a Motion to Dismiss Wine Merchant's appeal due to lack of standing was filed prior to DBR's Motion to Intervene, DBR was first allowed to intervene in the matter, and Wine Merchant's appeal was subsequently dismissed. The DBR Hearing Officer then granted summary judgment in favor of DBR, thereby invalidating Green Point's Class A liquor license.
The liquor license at issue was originally issued to Continental Liquor Store as a full-privilege Class A liquor license. In 1960, this Class A liquor license was transferred to a holder of a Class E license for operation of Cole Avenue Pharmacy at 195 Cole Avenue in Providence. Then, in 1994, the Class A liquor license was transferred to Jacob Marks; the Class E liquor license, which previously belonged to Cole Avenue Pharmacy, was dropped. Mr. Marks did not operate a liquor store; the Class A license was renewed every year but was kept in the Board of Licenses' safe until 1996 or later. Decision at 7, n. 7. In 1996, the Class A liquor license was transferred to Wine Merchant; however, Wine Merchant never opened a liquor store at 195 Cole Avenue. These facts appear to be largely undisputed and were the operative facts before the Hearing Officer.
In April, 2001, the Board of Licenses decided that the Class A liquor license belonging to Wine Merchant was not abandoned, despite the fact that the liquor license had not been in active use for approximately seven years. In a separate decision, the Board of Licenses then decided to permit the transfer of this Class A liquor license to Green Point. On May 2, 2001, The Da Vinci Center filed a complaint with DBR against the Board of Licenses and Green Point alleging violations of G.L. § 3-1-1 etseq. arising out of the transfer of this Class A liquor license. Green Point filed a Motion to Dismiss; on the day of the hearing for this motion, DBR filed a Motion to Intervene. Prior to dismissing The Da Vinci Center's action, DBR was allowed to intervene. The Hearing Officer then dismissed The Da Vinci Center's appeal for lack of standing and untimeliness. Thus, once The Da Vinci Center's appeal was dismissed, DBR proceeded on its own against the Board of Licenses and Green Point. Green Point filed a second Motion to Dismiss, arguing that DBR lacked standing to intervene; this second Motion to Dismiss was denied. DBR then moved for summary judgment. On May 3, 2002, DBR's Motion for Summary Judgment was granted; the Hearing Officer found that the Class A liquor license was null and void because it was not legally available to be transferred to Green Point as the license should have been canceled prior to the transfer pursuant to G.L. § 3-5-16.1.[1] Accordingly, DBR ordered the Board of Licenses to cancel the Class A license and declare the transfer invalid.
 DBR's Jurisdiction
Under Rhode Island law, DBR has the right, power, and jurisdiction to issue manufacturer's wholesaler's or retailer's Class G and Class I licenses, and local licensing authorities possess the right, power and jurisdiction to issue, revoke, suspend, or transfer all other licenses authorized in § 3-1-1et. seq.. See § 3-5-14, § 3-5-15, § 3-5-19, § 3-5-21. Matters which come before DBR on appeal are reviewed de novo.Tedford, et al. v. Reynolds, 87 R.I. 335, 340, 141 A. 264, 267 (R.I. 1958) (citing Kaskela v. Daneker, 76 R.I. 405, 407,71 A.2d 510, 511 (R.I. 1950)) ("the power of review vested in the liquor control administrator is not limited to a mere review of error of law, and . . . the administrator may in his discretion hear cases de novo"); Baginski v. Alcoholic BeverageCommission, 62 R.I. 176, 181-82, 4 A.2d 265, 267-68 (R.I. 1939);see Clark v. Alcoholic Beverage Commission, 54 R.I. 126, 127, 170 A. 79, 80 (R.I. 1934). Additionally, the "administrator [DBR] has the power, for proper cause, to revoke any kind of license." Belconis v. Brewster, 65 R.I. 279, 283-84,14 A.2d 701, 703 (R.I. 1940); see § 3-5-21.
 Standard of Review
A party who has "exhausted all administrative remedies available to him within the agency and who is aggrieved by a final order in a contested case is entitled to judicial review" by the Superior Court pursuant to § 42-35-15. Rhode Island General Laws § 42-35-15(g) governs the standard of review for an appeal of a final agency decision. The statute provides, in relevant part:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." § 42-35-15.
Sitting as an appellate court with a limited scope of review, the Superior Court justice may not substitute his or her judgment for that of the agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact.Center for Behavioral Health v. Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety Appliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). This directive applies even if the court may have been inclined to arrive at different conclusions and inferences upon review of the evidence and the record. Johnston AmbulatorySurgical Assocs. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Rhode Island Pub. Telecomm. Auth. v. Rhode Island StateLabor Relations Bd., 650 A.2d 479, 485 (R.I. 1994)); BarringtonSch. Comm. v. Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992).
Additionally, as long as "substantial evidence" exists to support the agency's determination, the Superior Court must uphold the decision. Barros, 710 A.2d at 684 ("In reviewing an administrative agency's decision, the Superior Court is limited to an examination of the certified record to determine whether the agency's decision is supported by substantial evidence");see Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993) ("The Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision"). The Rhode Island Supreme Court has defined substantial evidence as "`such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than preponderance.'"[2] Newport Ship Yard v.Rhode Island Comm'n for Human Rights, 484 A.2d 893, 897 (R.I. 1984) (quoting Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981)). Thus, only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record" may the Superior Court reverse. Baker v. Department of Employment Training Bd. ofReview, 637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v.Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981)). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (1977).
 Analysis
DBR's Sua Sponte Authority
Green Point argues that DBR lacked standing to appeal a decision of the Board of Licenses or to prosecute its own case, and therefore did not have authority to intervene in the appeal brought by The Da Vinci Center. DBR, in contrast, contends, pursuant to both statutory and common law grounds, that it possesses sua sponte authority to intervene in The Da Vinci Center's case.
The Court has indeed held that G.L. § 3-7-21 provides only three groups of people with the right of appeal from the local licensing board to the liquor control administrator:[3] (1) applicants who have been denied a license, (2) licensees who have had their licenses revoked or suspended, (3) any person authorized to protest against the granting of a license (such as those persons living within 200 feet of the proposed site of a license). See § 3-7-21; Earle v. Pastore, 511 A.2d 989, 990 (R.I. 1986). However, Green Point's contention that this limitation on the right of appeal precludes DBR fromintervening or bringing its own action is without merit.
Section 3-5-21(a) makes clear that DBR possesses sua sponte
authority to independently review a liquor license. Section3-5-21(a) states:
 "Every license is subject to revocation or suspension and a license is subject to fine by the board, body or official issuing the license, or by the department or by the division of taxation, on its own motion, for breach by the holder of the license of the conditions on which it was issued or for violation by the holder of the license of any rule or regulation applicable, or for breach of any provisions of this section." (Emphasis added.)
The court has determined that this language gives the Liquor Control Administrator the power and jurisdiction to revoke a liquor license on its own motion. Belconis, 65 R.I. at 283-84, 14 A.2d at 703. In Belconis, the owner of a Class A liquor license argued that the Liquor Control Administrator was without jurisdiction to initiate a hearing, on its own motion, to decide that the licensee was violating a condition of the license and that the license should therefore be revoked. Id. The court explicitly rejected this contention, stating that the Liquor Control Administrator has the "power and jurisdiction, of his own motion, to revoke such license as that of the petitioner." Id.
There is no question that under § 3-5-21(a), DBR, in the role of the Liquor Control Administrator, has independent power of the local Board to review a liquor license. See id. Thus, DBR had the right to bring its own motion to review, suspend, or revoke Green Point's license.
Furthermore, DBR's sua sponte authority is necessary for DBR to fulfill the obligations it has been given by the Legislature. It has long been established that the role of the Liquor Control Administrator in Rhode Island is that of a "superlicensing board" with a broad and comprehensive power of review. Hallene v. Smith, 98 R.I. 360, 364, 201 A.2d 921, 924 (R.I. 1964) (de novo review necessary to fulfill intention of Legislature to "provide broad and comprehensive control by the State over the liquor traffic and to vest that control in an administrative body"); Tedford, 87 R.I. at 342, 141 A. at 268;Baginski, 62 R.I. at 182, 4 A.2d at 268; see Clark, 54 R.I. at 130-31, 170 A. at 80, 81-82. This authority derives in part from the general supervisory authority in matters related to liquor licensing that is vested in DBR through § 3-2-2, which states that "[t]he department has general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting, keeping for sale, and selling beverages."
Further evidencing the wide powers of supervision and regulation vested in DBR and the scope of DBR's authority under §3-5-21(a), § 3-1-5 provides: "[t]his title shall be construed liberally in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." "Clearly the language of §3-1-5 mandates that our [the court's] construction of § 3-5-21 be in accordance with the declared purpose of title 3." Thompson v.Town of East Greenwich, 512 A.2d 837, 843 (R.I. 1986). InBaginski, the court relied in part on the language in § 3-1-5
in interpreting DBR's right to hear cases de novo. In that case, the court recognized that "the conclusion is irresistible that the legislature, which charged the commission with the carrying out of its legislative policy, likewise intended to vest in it the broadest, rather than the narrowest, power over local bodies in order to insure a state-wide conformity to the law." 62 R.I. at 182, 4 A.2d at 268. The same rationale militates against an interpretation of § 3-1-1 et seq. that would limit DBR's authority to review independently the status of a license.
As DBR may exercise its sua sponte authority to review, suspend, or revoke a license on its own motion, this Court finds that DBR did not act in excess of its statutory authority in initiating an action, on its own motion, relating to thetransfer of a license. In arguing that jurisdiction to review the transfer of a liquor license lies solely with the local licensing board, Green Point misplaces its reliance on Sunny DayRestaurant, Inc. v. Beacon Restaurant, Inc. 103 R.I. 707, 708,241 A.2d 295, 296 (R.I. 1968). The court in Sunny Day, deciding an issue relating to the Superior Court's jurisdiction, had no reason to consider the applicability of the Department's suasponte authority as related to a license transfer.[4]Id. More importantly, excluding issues relating to transfer of licenses from DBR's sua sponte authority as articulated in §3-5-21 does not comport with the legislative intent of the liquor licensing statues. The broad scope of authority vested in DBR as related to liquor licenses was clearly intended to prevent "a lack of uniformity in the manner and method of administering the liquor license law throughout the state, since a great deal depend[s] on the views of the individuals composing the local boards." Baginski, 4 A.2d at 267. Thus, DBR possessed the right to bring an action on its own motion to review matters related to the status, including the transfer, of the liquor license in question. As DBR had authority to bring its own action, DBR also had standing to intervene in the action originally brought by The Da Vinci Center.
Propriety of Allowing Intervention
Although DBR has the right, on its own motion, to review, revoke, or suspend a license, this Court may still consider whether allowing intervention was proper under the circumstances. The rule of permissive intervention articulated in Super. R. Civ. P. 24(b) states:
 "Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."
Thus, this Court must first determine whether DBR and The Da Vinci Center presented common questions of law and fact. In cases where there exist common questions of law and fact, allowing intervention may prevent multiplicity of litigation and promote judicial or administrative efficiency. See Coventry v. HickoryRidge Campground, 111 R.I. 716, 724, 306 A.2d 824, 829 (R.I. 1973) ("[t]he intent of the rule providing for intervention was to avoid multiplicity in litigation").
If the parties have presented common questions of law and fact, the Court must then decide whether allowing intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Court's are primarily concerned with prejudice to a party's rights due to untimely intervention. "[I]t is well settled that the timeliness of a motion to intervene is a matter committed to the sound discretion of the trial justice." DirectAction for Rights Equality v. Gannon, 713 A.2d 218, 222 (R.I. 1998). In Marteg Corp. v. Zoning Board of Review of the City ofWarwick, the court articulated the principle that "[t]imeliness of intervention is to be judged by two criteria: (1) the length of time during which the proposed intervener has known about his interest in the suit without acting and (2) the harm or prejudice that results to the rights of other parties by delay."425 A.2d 1240, 1243 (R.I. 1981) (citing McDonald v. E.J. Lavino Co.,430 F.2d 1065, 1073 (5th Cir. 1970)). However, "intervention after final judgment is unusual; consequently the party seeking to intervene must satisfy an especially heavy burden." DirectAction for Rights Equality, 713 A.2d at 222. Courts are reluctant to allow post-judgment intervention because it may "(1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court." Marteg, 425 A.2d at 1243 (citing McDonald, 430 F.2d at 1073).
With respect to the common issues requirement for permissive intervention, DBR argues that DBR's claim and The Da Vinci Center's claim raise common questions of law and fact. In arguing that DBR had no independent "claim" against Green Point and that allowing intervention would not serve the purpose of preventing multiplicity of litigation, Green Point essentially argues that intervention should not have been allowed because no common questions of law and fact exist. Green Point's arguments are predicated on the proposition that DBR did not have the right to bring its own action.
This Court has found that DBR has the right to review a liquor license on its own motion. Thus, DBR undoubtedly had a claim against Green Point insofar as it had authority to review, revoke, or suspend Green Point's liquor license on its own motion and after a hearing. There is also no question that DBR's claim had questions of law and fact in common with the claim raised by The Da Vinci Center. DBR's motion to intervene alleged that the Board of Licenses violated § 3-5-1 et seq. in the transfer of the license at issue. Order at 2. The Da Vinci Center's complaint alleged violations of § 3-1-1 et seq. arising out of the transfer of the liquor license. Order at 2. The record reflects that The Da Vinci Center and DBR not only had common
questions of law and fact, but also that the essential questions of law and fact were identical: the heart of both The Da Vinci Center's original complaint and DBR's motion to intervene is the issue of whether the liquor license in question should have been declared abandoned by the Board of Licenses pursuant to §3-5-16.1, and therefore did not exist to be transferred. SeeCharlesgate Nursing Center v. Rhode Island, 723 F. Supp. 859, 862 (D.R.I. 1989) (requirement of common issues for permissive intervention satisfied when proposed interveners advance claims virtually identical to original plaintiff). Thus, the Hearing Officer relied on substantial evidence in finding common questions of law and fact between DBR's claim and The Da Vinci Center's claim, noting that "[b]oth parties are concerned with the legality of the transfer of the License at issue [and] [b]oth parties have raised the issue of the abandonment of the License."Order at 4.
Additionally, allowing DBR to intervene certainly served the purpose of preventing multiple actions because, as the Hearing Officer noted, "the Department has independent authority and jurisdiction to bring a separate matter against Respondents. . . . [and] [t]he Department has already indicated that it plans to file a separate action against Green Point and Providence if its Motion to Intervene is denied." Order at 4. Permitting intervention served to conserve administrative resources and encouraged accelerated — not delayed — determination of the status of the license in question.
With respect to the timeliness requirement for permissive intervention, Green Point claims that intervention was not timely, and that Green Point's rights were prejudiced by this delay. Although DBR did not submit its motion to intervene with expedience, the record does not demonstrate that intervention was not timely under standard articulated in Marteg. See 425 A.2d at 1243. DBR was aware of the suit for a protracted period of time and did not act until the last minute; DBR filed a motion to intervene on the day of the hearing for Green Point's motion to dismiss The Da Vinci Center's appeal. The present case, however, involves the unique feature that DBR possesses sua sponte
authority to revoke a license, and there is no statutory or other limitation on the time period in which DBR may bring its own action to do so. Thus, although it is not an ideal course of conduct, it is plausible that an agency charged with supervisory responsibilities such as DBR might — as a means of conserving administrative resources — adopt a "wait-and-see" approach until such time as it appears necessary to intervene in order to protect the agency's interest. This approach may be permissible so long as the rights of the original parties are not prejudiced by the delay. See generally Banco Popular de Puerto Rico v.Greenblatt, 964 F.2d 1227, 1232 (1st Cir. 1992) (prejudice is a vital element in timeliness inquiry under Fed.R.Civ.P. 24(b)).
The Hearing Officer's determination that, of the two criteria articulated in Marteg, the harm or prejudice to a party resulting from allowing intervention is more important than the length of time a party has known of its interest in a matter without acting, did not constitute an abuse of discretion. SeeMcDonald, 430 F.2d at 1072 (citations omitted) ("[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervener's delay in moving to intervene");Marteg, 425 A.2d at 1240; Order at 4. Courts have noted that, as a matter of policy, courts and agencies should be more concerned with prejudice to parties than they should be with refusing intervention as a means of punishing slothful interveners. See McDonald, 430 F.2d at 1074 (timeliness requirement is not a tool to punish intervener for not acting more promptly, but rather should be used to insure that original parties should not be prejudiced by intervener's failure to apply earlier). In the instant case, the Hearing Officer did not abuse her discretion and relied on substantial evidence in allowing DBR to intervene, noting that "[t]he Department has already indicated that it plans to file a separate action against Green Point and Providence if its Motion to Intervene is denied. Therefore, a denial of the Motion to Intervene would only serve to cause a delay in the final adjudication of this matter." Order at 4. Indeed, because DBR had the right to revoke the liquor license in question on its own motion and after a hearing, and because DBR was prepared to do so, allowing intervention here furthered the efficiency of adjudicating the matter instead of impeding it, and therefore did not prejudice the rights of the original parties.
In allowing DBR to intervene, the Hearing Officer noted that "[i]t is more efficient and serves to conserve administrative resources to allow the Department to proceed in this matter rather than have to initiate a new proceeding with the same results . . . a hearing before this Department." Order at 5. Additionally, the Hearing Officer recognized that
 "[a]llowing the Motion to Intervene does not delay the adjudication rights of the original parties in that the Department had no position on Green Point's Motion to Dismiss and a hearing has been heard on this already. If the Motion to Dismiss is granted, there has been no delay in adjudicating the rights of the original parties. If the Motion to Dismiss is denied, the Department will be in the same position as Da Vinci: the discovery phase." Order at 5.
As DBR could have, and evidently would have exercised its suasponte authority had intervention not been allowed, the alternative course of conduct — dismissing The Da Vinci Center's claim and requiring DBR to bring its own motion to revoke Green Point's license — would have resulted in the adjudication of the same issue over a longer period of time.
Green Point also asserts that its rights were prejudiced by the Hearing Officer's choice to first allow DBR to intervene prior to allowing Green Point's motion to dismiss The Da Vinci Center's claim because a party seeking post-judgment intervention has a much greater burden to satisfy than a party seeking intervention prior to judgment. See Marteg, 425 A.2d at 1240. This Court finds that Green Point's rights were not prejudiced by the order in which the Hearing Officer made her determinations. If the Hearing Officer had first dismissed The Da Vinci Center's claim, DBR would have initiated an action on its own motion, and would not have sought post-judgment intervention. For this reason, DBR would not have had to satisfy a higher burden had the motion to dismiss The Da Vinci Center's claim been granted first. Therefore, the Hearing Officer relied on substantial evidence and properly exercised discretion in allowing DBR to intervene prior to deciding Green Point's motion to dismiss.
Finally, Green Point argues that DBR should not have been allowed to intervene because DBR was in conflict as intervener and arbiter. Although Green Point claims that "[i]t is obvious that the Department ignored procedure, as well as the concepts of fairness and equity to allow itself intervention," this Court sees no difference between DBR bringing its own motion to revoke or suspend a license and DBR intervening in a matter already before a DBR hearing officer dealing with those same issues.Memorandum for Green Point at 9. Furthermore, "[t]o overcome the presumption in favor of an adjudicator's honesty and integrity, a party claiming bias or some other disqualifying factor must adduce evidence that: (1) the same person(s)
involved in building one party's adversarial case is also adjudicating the determinative issues; and/or (2) other special circumstances render the risk of unfairness intolerably high."Kent County Water Auth. v. State (Department of Health),723 A.2d 1132, 1137 (R.I. 1999) (emphasis added) (citing La PetiteAuberge, Inc. v. Rhode Island Commission for Human Rights,419 A.2d 274, 285 (R.I. 1980)). In the instant case, the Hearing Officer was not the same individual building DBR's case. Furthermore, Green Point has made no showing that special circumstances exist that render the risk of unfairness "intolerably high." Indeed, the Hearing Officer's decision is based on substantial evidence and is not affected by errors of law. Accordingly, this Court finds Green Point's argument to be without merit.
Granting Summary Judgment in Favor of DBR
After allowing DBR to intervene, the Hearing Officer granted summary judgment in favor of DBR, finding that "[a]s a matter of law, the License was abandoned and does not exist to be transferred. It is not necessary to determine whether the License existed to be transferred in 1994 as the License ceased operations after 1994 and pursuant to R.I. Gen. Laws § 3-5-16.1
was abandoned by the very latest in 1997." Decision at 9. However, the Hearing Officer also determined that the transfer of the Class A license, without tandem transfer of the Class E license, constituted an illegal A/E license split, and, therefore the license did not exist to be transferred in 1994. Decision
at 15. DBR insists that a grant of summary judgment was proper both because the license at issue was abandoned and because the license did not exist to be transferred due to an illegal A/E license split; Green Point argues that DBR erred in granting summary judgment as a matter of law because abandonment is within the original exclusive jurisdiction of the Board of Licenses, and because the license did not involve an illegal A/E split. This Court finds that the Hearing Officer relied on substantial evidence in determining that the license was not legally available to be transferred due to abandonment; because this issue is dispositive, this Court will not reach the issue of the A/E license split.
Cancellation of an abandoned license is not merely a discretionary course of action for the Board of Licenses; the language of § 3-5-16.1 clearly states that the local licensing board shall cancel a license if the licensee has ceased to operate under the license for a period of 90 days or more.[5] Marty's Liquors, Inc. et al. v. The Warwick Boardof License Commissioners et al., 1985 R.I. Super. LEXIS 134, *20 (filed Jan. 30, 1985) ("It is clear that in 1969 the general assembly intended to reduce the number of outstanding Class A licenses in the more populous cities and towns through a process of attrition. The provisions of § 3-5-16.1 could not be set out in a more strict or mandatory fashion"). Despite this statutory directive, the Board of Licenses determined that several years of non-use did not render the license at issue abandoned, and, in a subsequent decision, allowed the transfer of the license to Green Point. The matter before DBR called into question the validity of the transfer of the license from Green Point to Wine Merchant. As DBR may review decisions of the Board of Licenses de novo, a review of the status of the license prior to the transfer, including a consideration of abandonment, is well within DBR's jurisdiction when considering the validity of the transfer itself. See Tedford, 87 R.I. at 340, 141 A. at 267 (citingKaskela, 76 R.I. at 507, 71 A.2d at 511) ("the power of review vested in the liquor control administrator is not limited to a mere review of errors of law, and . . . the administrator may in his discretion hear cases de novo"); Baginski, 62 R.I. at 181-82, 4 A.2d at 267-68. See G.L. § 3-2-2 ("[t]he department has general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting, keeping for sale, and selling beverages"). Moreover § 3-5-21
allows DBR to review or revoke a license on its own motion "for breach by the holder of the license of any rule or regulation applicable, or for breach of any provisions of this section"; the language of § 3-5-16.1 makes clear that continued use of a license is a regulation applicable to liquor licenses. Thus, §3-5-16.1, read in connection with § 3-5-21, clearly allows DBR to revoke a license for abandonment when the Board of Licenses has failed to do so. See Belconis, 65 R.I. at 283, 14 A.2d at 703 ("[t]here is nothing in the statute to limit the power of the administrator to revoke or suspend licenses to those which he is authorized to issue, and he may initiate a hearing on his own motion to revoke or suspend any type of liquor license").
In granting summary judgment in favor of DBR, the Hearing Officer determined that
 [a]s a matter of law, under R.I. Gen. Laws § 3-5-16.1, the License clearly should have been cancelled by Providence.
 Therefore, assuming that the License was properly transferred in 1994 or 1996, existed within the statutory cap of R.I. Gen. Laws § 3-5-16, or was properly split from a Class E liquor license, the License transferred to Green Point as a matter of law should never have been transferred. Under the undisputed facts, the License ceased operations no later than ninety (90) days or one (1) year from the alleged transfer to Wine Merchant. Thus, pursuant to R.I. Gen. Laws § 3-5-16.1 and R.I. Gen. Laws § 3-5-21, the License transferred to Green Point as a matter of law should never have been transferred. Decision at 8 (emphasis added).
The Hearing Officer had before her undisputed evidence that the license was not in active use in the period of time between the transfer of the license to Wine Merchant and the subsequent transfer of the license from Wine Merchant to Green Point. Green Point, having had opportunity to present evidence in the hearings held by the Hearing Officer,[6] has not presented any evidence that would suggest the license in question was in operation at any time from 1996 to the present time. Accordingly, there was nothing left for DBR to do but to revoke, or direct the Board of Licenses to revoke the license previously transferred, as there was no jurisdiction in the Board of Licenses to allow the transfer of a license that had, by statute, been abandoned.See Baginski, 62 R.I. at 182, 4 A.2d at 268 (supervisory licensing authority had no choice but to revoke license in light of undisputed evidence that local licensing authority had no jurisdiction to grant the license in the first instance).
Additionally, allowing the transfer and prolonged non-use of liquor licenses contravenes public policy. Allowing an individual to purchase a liquor license, allow that license to lie dormant, and subsequently transfer that license to a future user promotes private market speculation of licenses that are otherwise difficult to obtain through proper application to the Board of Licenses. It is not the purpose of the liquor licensing statutes to create or allow to exist a private market for the transfer of liquor licenses, outside the purview of DBR's regulatory watch.See Marty's Liquors, 1985 R.I. Super. LEXIS 134, *20 ("[t]he general assembly clearly did not want Class A licenses to be held in limbo in over-licensed cities and towns"). Moreover, allowing licenses to remain dormant for prolonged periods of time renders ineffective the function of the rigid statutory limitations on the number of licenses that may exist at any time. Indeed, DBR'ssua sponte authority, as well as the statutory directive that local licensing authorities cancel abandoned licenses, appear to be protections against liquor-license speculators who may impede efficient distribution of such licenses when they are in high demand and of limited availability. In light of the evidence and applicable rules of law, this Court finds that the Hearing Officer's grant of summary judgment in favor of DBR was not affected by error of law.
Equitable Estoppel
Green Point also argues that equity prohibits revocation of the license in question because DBR acquiesced to the dormancy of the license and subsequently chose to selectively enforce the abandonment provision against Green Point. Additionally, Green Point asserts that equity prohibits revocation of the license because Green Point is a bona fide purchaser of the license with no knowledge of the Class E history. DBR argues that Green Point did not demonstrate prejudicial reliance on any affirmative representations made to Green Point by DBR. Additionally, DBR notes that Green Point may, at its option, commence a civil action for damages against a prior license holder if Green Point has suffered damages as a result of purchasing a license that it believed to be valid.
The key elements in the doctrine of estoppel "are, first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and, secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury." Lichtenstein v. Parness,81 R.I. 135, 138, 79 A.2d 3, 5 (R.I. 1953). Generally, estoppel will not be applied against a government agency acting in a public capacity. Ferrelli v. Dept. of Employment Security,106 R.I. 588, 592, 261 A.2d 906, 909 (1970). In the context of a public agency, the Rhode Island Supreme Court has held that:
 "in an appropriate factual context the doctrine of estoppel should be applied to public agencies to prevent injustice and fraud where the agency or officers thereof, acting within their authority,
made representations to cause the party seeking to invoke the doctrine either to act or refrain from acting in a particular manner to his detriment." Romano v. Retirement Board of the Employees' Retirement System of the State of Rhode Island, 767 A.2d 35, 39 (R.I. 2001) (citation omitted) (emphasis in original).
Additionally, a party seeking estoppel against the government should show that imposition of such doctrine would not be against the public interest. Lerner v. Gill, 463 A.2d 1352, 1363 (R.I. 1983).
The Hearing Officer found Green Point's estoppel argument to be without merit, writing,
 The Department did not make any affirmative representations to Providence or Green Point in order to induce reliance thereon nor did Providence or Green Point rely on any representations by the Department to its detriment. . . . There are no facts shows [sic] any detriment suffered by Green Point by relying on the Department's representations. Indeed, Aitchison's affidavit shows that Providence was informed of problems with this License and not the contrary. . . .
 At hearing, Green Point could not point to any statutory or case law in support of its argument that it is protected from any finding that the License is invalid due to being a bona fide purchaser. Green Point argues that it did not have `any knowledge of the history of the case.' Green Point apparently argues that it did not know about the issue of the A/E split. See Transcript, p. 46.
 This argument is disingenuous. On April 2, 2001, Providence considered the issue of the failure [sic] the Wine Merchant to have an active Class A liquor license (the License at issue here). On April 9, 2001, a decision was issued by Providence that the License was not abandoned. The current counsel for Green Point represented Wine Merchant at the April 2, 2001 hearing. There was discussion regarding the A/E issue and the issue of abandonment. . . . From the transcript of this hearing, there was extensive discussion regarding the alleged flaws of the license. In addition, at that time the License had not been transferred to Green Point. So this discussion was prior to Green Point purchasing the License. Decision at 21-23.
After considering all of the facts and circumstances of the instant case in light of the applicable rules of law, this Court concludes that the Hearing Officer's decision was not clearly erroneous or arbitrary. The record contains no evidence of affirmative representations made by DBR on which Green Point detrimentally relied; indeed, Green Point's estoppel argument lacks (1) any showing that DBR made affirmative representations or engaged in equivalent conduct regarding the status of the license in question, (2) any showing that, if such conduct existed, it induced Green Point to act in reliance on such a representation, and (3) any showing that such reliance, if it exists, was detrimental to Green Point.
Green Point insists that equitable estoppel should apply because DBR failed to challenge the license at an earlier time and therefore acquiesced to the dormancy of the license, and because DBR selectively enforced the abandonment provision in §3-5-16.1. Although DBR regularly receives reports from the Board of Licenses regarding license status, this conduct does not constitute acquiescence to the dormancy of a liquor license. DBR has no affirmative statutory or other obligation to affirm or deny each and every decision of the Board of Licenses. Moreover, DBR's ability to exercise its independent authority to revoke a license is not confined by statute or otherwise to a specific period of time. Thus, DBR's mere inaction for a period of time does not rise to the level of an affirmative representation.See Griffin v. Reich, 956 F. Supp. 98, 108 (D.R.I. 1997) (quoting Newport Nat'l Bank v. United States, 556 F. Supp. 94, 98 (D.R.I. 1983)) ("It is clear that `mere inaction, delay or sloth on the part of the government' will not trigger the application of estoppel.") Even if such silence were sufficient to establish an affirmative representation on the part of a public agency, Green Point has not demonstrated any detrimental
reliance on DBR's conduct. Southwest Marine v. Gizoni, 112 So. Ct. 486, 494, 502 U.S. 81, 92 (1991) (detrimental reliance is a critical element of equitable estoppel). Additionally, Green Point's argument that DBR was selectively enforcing § 3-5-16.1
and should therefore be estopped from revoking the license is without merit.
Green Point also argues that equity prohibits revocation of the license because Green Point was a bona fide purchaser with no knowledge of the Class E history of the license in question. DBR suggests that this argument is disingenuous because Green Point was aware of the Board of Licenses hearing related to the potential abandonment of Wine Merchant's license. As this Court has found that abandonment of the license constitutes sufficient grounds for revoking the license in question, this Court need not consider the equity argument brought by Green Point on the Hearing Officer's alternative reason for revoking the license — the illegal A/E split. It bears mention, however, that in light of the fact that Green Point was represented by counsel before the Board of Licenses and DBR, and in light of the fact that counsel for Green Point was the same counsel as that for Wine Merchant, Green Point should have had a priori knowledge of the precarious status of the Class A liquor license, the statutory directive ordering cancellation of liquor licenses not in use, and the authority of DBR to consider the status of a license on its own motion. See Casa DiMario v. Richardson, etal., 763 A.2d 607, 612 (R.I. 2000) (citations and quotations omitted) ("[a]ny party dealing with a municipality is bound at his own peril to know the extent of its capacity").
Although Green Point urges this Court to apply the doctrine of estoppel against DBR, Green Point has not demonstrated that estoppel would not contravene public policy in this case. Indeed, it is clear to this Court that applying the doctrine of estoppel against a public agency accused of inaction — in a circumstance where that agency is expected to engage in supervisory, and not detailed, daily action — would explicitly redefine DBR's authority and responsibilities in a manner inconsistent with the legislative intent underlying § 3-1-1 et seq. To apply estoppel against DBR in a situation where the delay in DBR's action neither prejudiced Green Point's rights nor induced prejudicial reliance would effectively result in the judicial creation of a limitations period for DBR's sua sponte authority where no statutory or other limitation previously existed. Accordingly, the Hearing Officer's determination that Green Point's equible estoppel claims were without merit was not arbitrary or capricious or an abuse of discretion.
 Conclusion
DBR clearly possesses the right to revoke a Class A liquor license, such as that of Green Point, on its own motion for breach by the licensee of a term of the license. In this case, DBR's intervention in The Da Vinci Center's appeal was no different from an independent assertion of its sua sponte
authority; DBR therefore had standing to intervene. Additionally, the Hearing Officer relied on substantial evidence that Green Point's rights would not be prejudiced if DBR were allowed to intervene and therefore properly allowed intervention. The statutory directive requiring the Board of Licenses to cancel a license that is abandoned establishes continued use of a license as a condition to its issuance. As Green Point did not dispute that the liquor license was not in active use by Wine Merchant, the Hearing Officer relied on substantial evidence in finding that the license was abandoned and therefore did not exist to be transferred. The substantial and probative evidence supports a grant of summary judgment in favor of DBR. Additionally, in light of the absence of Green Point's prejudicial reliance on any affirmative representation made by DBR, the Hearing Officer's decision that estoppel should not apply against DBR was not clearly erroneous or arbitrary. Accordingly, this Court affirms the agency's decision and denies both Green Point's appeal and its request for declaratory judgment.
Counsel shall prepare an appropriate judgment for entry.
[1] The Hearing Officer also found that, when the Class A license was transferred to a holder of a class E license, and when those licenses were held and renewed in tandem, they merged into a Class A/E license. The Hearing Officer then concluded that the transfer of the Class A license without the Class E license to Jacob Marks in 1994 constituted an illegal Class A/E license split.
[2] The Rhode Island Supreme Court has similarly defined "legally competent evidence." Arnold v. Rhode Island Dept. ofLabor Training Bd. of Review, 2003 R.I. LEXIS 71, *5 (Mar. 26, 2003) (defining legally competent evidence as "`relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance'") (quoting Rhode Island Temps,Inc. v. Department of Labor Training Bd. of Review,749 A.2d 1121, 1125 (R.I. 2000)).
[3] DBR currently acts as the Liquor Control Administrator in Rhode Island
[4] In Sunny Day, the court held that a trial justice was correct in dismissing Sunny Day's complaint for lack of jurisdiction over subject matter because "the complaint seeks a determination of issues relative to the transfer of the liquor license which is the exclusive prerogative of the council."103 R.I. 707 at 708, 241 A.2d 295 at 296. A complaint was filed with the Superior Court seeking to prohibit a town board from holding a hearing on a proposed liquor license transfer. Id. It is in this context that the court stated "[w]hether the application filed with the council is to be granted or denied is a matter within the original and sole jurisdiction of the town council with a right of appeal to the liquor control administrator by virtue of G.L. 1956, s 3-7-21." Id.
[5] Section 3-5-16.1 allows the local licensing authority to extend this period of time to one year "where the abandonment or cessation of operating was due to illness, death, condemnation of business premises, fire or other casualty." No such extenuating circumstance exists in the present case.
[6] The hearing on the merits of DBR's claim began on September 24, 2001. A hearing on Green Point's motion to dismiss DBR's claim was held on November 16, 2001. Oral argument on DBR's motion for summary judgment was heard on March 5, 2002.Decision at 2.